## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| | § | |
| AKOUSTIS TECHNOLOGIES, INC.,[1] | § | Case No. 24-12796 |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | **Re. D.I. 176, 314, 315, 316, 384, 452 & 453** |

## QORVO, INC.'S INITIAL SALE OBJECTION
## AND OBJECTION TO NOTICE OF SECOND AMENDED CURE COSTS AND
## POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

Qorvo, Inc. ("Qorvo"), through its undersigned counsel, hereby files this initial sale objection (the "Objection") pursuant to the order approving the bidding procedures [D.I. 176] (as amended, the "Bidding Procedures Order") and *Debtor's Notice of Second Amended Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of Substantially All Assets* [D.I. 452] ("Cure Notice").[2] The factual background set forth in *Qorvo, Inc.'s Trade Secret Objection* [D.I. 405, 418] and the related declaration [D.I. 406, 419] are incorporated herein by reference. Qorvo respectfully represents as follows:[3]

## INITIAL OBJECTION

1.      Qorvo objects to any sale of the Assets or other property in Debtors' possession that (i) violates the *Permanent Injunction* [Del. D.I. 710] (the "Injunction") issued by the United

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Akoustis Technologies, Inc. (9046), Akoustis, Inc. (5617), Grinding and Dicing Services, Inc. (7929), and RFM Integrated Device Inc. (1138). The Debtors' corporate headquarters is located at 9805 Northcross Center Court, Suite A, Huntersville, NC 28078.

[2]    Docket references to the United States Bankruptcy Court for the District of Delaware shall be delineated as "[D.I. #]" and docket references to United States District Court for the District of Delaware shall be delineated as "[Del. D.I. #]."

[3]    Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the Bidding Procedures Order.

States District Court for the District of Delaware, this Court's letter ruling dated April 18, 2025 [D.I. 453] (the "Letter Ruling") or of Section 541 of the Bankruptcy Code or (ii) otherwise jeopardizes or threatens Qorvo's property rights. Qorvo (i) spent significant time and resources successfully prosecuting a nearly three-year litigation against Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis"), which culminated in a jury verdict that Akoustis willfully and maliciously misappropriated Qorvo's trade secrets and the issuance of the Injunction, and (ii) took considerable efforts to protect its rights throughout these proceedings, including obtaining the Letter Ruling to prevent the sale of Enjoined Information in any Sale Transaction.  The protection of its property and trade secrets is paramount to Qorvo, and Qorvo will continue to protect and enforce its rights to the fullest extent of the law.

2.    On April 18, 2025, this Court, after an evidentiary hearing, found that "Debtors have not met their burden to show that the Disputed Data . . . have been cleansed" and that "Debtors may not sell" "(i) documents in Group 2 (Qorvo BAW Filter and resonator designs, sixteen trade secrets) and Group 3 (Qorvo's trimming method and procedures, the trade secrets on which the parties have not yet agreed); (ii) documents which Qorvo has not yet reviewed (including documents provided to Qorvo at the end of March); (iii) documents withheld from Qorvo because of confidentiality concerns and (iv) files and folders that may be on external devices (collectively, "Disputed Data")." *See* Letter Ruling at 2-3.[4]

3.    Given the foregoing, any Sale Order must include (1) procedures and mechanics for Qorvo to ensure that no Disputed Data is included in any sale, (2) language specifying that, to

---

[4]    Further, "[t]here is no disagreement on Qorvo Trade Secret Information in Groups 4, 5, 6 and 7," Letter Ruling at 2.  However, there is no procedure to verify that such information will be omitted and ultimately destroyed.  Likewise, while Akoustis "significantly narrowed the property which it believed was necessary for any go-forward business, thus eliminating the need to cleanse that data/documents for purposes of the sale," *id.* at 2, getting rid of the data does not solve for the problem that the sale may still include BAW filter products that incorporated Enjoined Information in their manufacture, which cannot be sold.

the extent any Disputed Data is erroneously included in such a Sale Transaction, such Disputed Data remains subject to the Injunction and is not being sold free and clear of any liens, claims or interests pursuant to Section 363(f) of the Bankruptcy Code, and (3) reasonable processes to verify that no Disputed Data makes its way to the Successful Bidder.

4.      As of the date hereof, Qorvo does not know what "Sale Transaction" Debtors seek to pursue. Qorvo has no transparency regarding, among other things: (i) the specific Assets, property and/or business actually being sold, (ii) whether the ultimate transaction is a liquidating sale to the Stalking Horse Bidder or a going-concern sale to a competing buyer, (iii) the identity of the Successful Bidder, (iv) the proposed form of Sale Order, or (v) Debtors' ultimate plan for physical remediation of the Enjoined Information.

5.      In addition, Qorvo remains concerned about a potential-insider transaction and the threat of reintroduction of Enjoined Information, as well as Debtors' ongoing violations of the Injunction during these Chapter 11 Cases, through the manufacture and sale of products impermissibly utilizing Qorvo's trade secrets and patented technology. Absent additional facts, including information sought through Dr. Kim, Qorvo takes issue with a potential 363(m) finding (especially in connection with an insider Sale Transaction) and whether the Debtors are exercising business judgment. As such, Qorvo reserves all such rights and arguments, including to raise any such arguments by the Supplemental Sale Objection.

6.      A sale under Section 363 neither allows a potential buyer to thereafter violate the Injunction nor releases a buyer from future infringement liabilities. As such, any violations of Qorvo's rights via purchase and use of products or processes that infringe Qorvo's patents or trade secrets will constitute an independent cause of action against the Successful Bidder.  As part of the Successful Bidder's due diligence process, it is incumbent on the Successful Bidder to

determine whether any such liability exists, and cure (or choose to take on) the liability prior to the purchase. If the Successful Bidder's purchase and subsequent use of the products, processes, information or data to develop products infringes upon Qorvo's intellectual property rights, then that is a separate infringement which Section 363 does not insulate. *See generally, Morgan Olson, LLC v. Frederico (In re Grumman Olson Industries, Inc.)*, 445 B.R. 243, 250 (Bankr. S.D.N.Y. 2011) ("[A] Section 363 sale order does not give [defendant] a free pass on future conduct.") (citing *Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R. 790, 796-97 (N.D. Ill. 1997) (sale order "was not intended to, nor could it, preempt all possible future successor liability claims")), *In re Old Carco LLC*, 593 B.R. 182 (Bankr. S.D.N.Y. 2018) (a sale free and clear does not insulate a purchaser from liability for post-sale conduct even though the product was manufactured and sold before the sale's closing); *Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 157 (2d Cir. 2016) (a section 363 sale order cannot bar a claim that arises from post-sale wrongful conduct).

7.    Moreover, Section 363(e) requires the Court to provide adequate protection to ensure the continued protection of Qorvo's property rights and adherence to the Letter Ruling and Injunction. That section provides in relevant part that, "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

8.    Here, the Letter Ruling explicitly forbids the sale of Qorvo's property, and the Debtors failed to establish that they were not attempting to sell Qorvo's property (or, conversely, that they did in fact adequately "cleanse" Debtor's own property) in their proposed sale of data

-4-

and information to third parties pursuant to the Bidding Procedures Order. While Debtors have expressed to the Court – and the Court has ruled – that Debtors do not intend to sell Enjoined Information, Qorvo should be provided a reasonable opportunity to ensure that its property is not in fact being sold and be adequately protected against such risk through inclusion of requested language in the ultimate Sale Order.

9.      Adequate protection is generally a concept applied to protect secured creditors, and Qorvo acknowledges that typical adequate protection best fits a secured creditor situation. However, "[a]dequate protection" includes any relief, other than compensation as an administrative expense, that will "result in the realization by such entity of the indubitable equivalent" of the terminated interest, 11 U.S.C. § 361(3); *see also In re Bohne*, 57 B.R. 461, 463 (Bankr. D.N.D. 1985) ("An offer of adequate protection must as nearly as possible under the circumstances of the case provide the creditor with the value of its bargained for rights consistent with the concept of indubitable equivalence."); *Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions (In re Spanish Peaks Holdings II, LLC)*, 872 F.3d 892, 900 (9th Cir. 2017) ("[T]he broad definition of adequate protection makes it a powerful check on potential abuses of free-and-clear sales."). To that end, courts have provided adequate protection to protect parties with interests or potential interests in assets sold via Section 363. *See, e.g., Dishi & Sons v. Bay Condos LLC,* 510 B.R. 696, 711-12 (S.D.N.Y. 2014) (concluding that adequate protection could take the form of a lessee's continued possession because it was the indubitable equivalent of the interest); *Ill. Dep't of Revenue v. Hanmi Bank*, 895 F.3d 465, 473 (7th Cir. 2018) ("In short, an entity whose lien or other interest is removed from property in order to facilitate its sale is entitled to compensation for whatever loss the removal causes the entity.").

10.     Courts have also outright prohibited sales in reliance of Section 363(e) where the

sale could impact third party interests. *See, e.g.*, *In re Magness*, 972 F.2d 689, 697 (6th Cir. 1992) (prohibiting auction of golf membership under Section 363(e) because sale impacted the property interests of others, including those on the waiting list, the club itself, and other members of the club).

11.    In *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577 (Bankr. D. Ariz. 2009), the bankruptcy court prohibited the sale of a National Hockey League ("NHL") team when the court could not provide adequate protection of NHL's interest in the league's bylaws restrictions to a team franchise transfer.  Under the NHL's bylaws, it had a right to admit only new members who meet its requirements and right to control where its members play home games. *Id*. at 591.  While the debtors and the NHL were litigating those rights in a separate adversary proceeding, the debtors sought to sell the team to a purchaser who would move the team to Hamilton, Canada. *Id.*   The court ruled that monetary payment could not adequately protect the NHL's rights, because if the NHL ultimately prevailed in the litigation but the team had already moved to Hamilton in the interim, such outcome is "apropos to the old adages about closing the barn door after the horse is long gone and how do you un-ring the bell." *Id.*

12.    Here, the Debtors insist that they do not intend to sell Qorvo's property, and the Letter Ruling provides that the Debtors cannot sell any data or information that the Debtors have not cleansed of Qorvo's information.  While the entire sale need not be thwarted as the court determined in *Dewey*, Qorvo's interests in ensuring that the assets do not contain Enjoined Information, and the Letter Ruling is adhered to, can be adequately protected only by providing Qorvo an opportunity to at least audit the assets that Debtors propose to sell.  The Sale Order should therefore provide Qorvo with a reasonable opportunity to review the data and information that is being sold (including all data and information potentially containing Qorvo intellectual

property), to avoid a situation where it is too late to "un-ring the bell" or that will spawn unwarranted litigation.

13.     Accordingly, consistent with Section 363(e) of the Bankruptcy Code, and to adequately protect Qorvo against future infringement of its property rights, Qorvo requests that any Sale Order prohibits the sale of any infringing inventory and include (1) a front end provision providing Qorvo a reasonable amount of time to review the package of data and information that Debtors propose to transfer to the Successful Bidder, prior to such transfer, (2) an audit right consistent with the Injunction at some reasonable time after the Closing to ensure that none of Qorvo's data stolen by Debtors has been reintroduced into the Successful Bidder's system and (3) language clarifying that any property of the Debtors received by the Successful Bidder in contravention of the Letter Ruling and Injunction is not sold pursuant to the Sale Order (and does not receive the benefit of any provisions or findings therein), remains Qorvo's property, and remains subject to the Letter Ruling and the Sale Order.

14.     To the extent the Stalking Horse Bidder is the Successful Bidder as contemplated by the Bidding Procedures Order and the Stalking Horse Agreement, Qorvo has no objection to the sale of equipment and machinery to the Stalking Horse Bidder, provided that (i) the manner and process for destruction and remediation of any Enjoined Information is specified in the applicable Sale Order and acceptable to Qorvo and (ii), consistent with the Bidding Procedures Order, such Purchased Assets are subjected to a "factory reset" process, which shall include the deletion of data related to the Debtors' products and/or processes stored in such machinery and equipment, where such data was not provided by the manufacturer or supplier thereof, and reverted to factory settings, or otherwise cleansed in a manner acceptable to Qorvo. The Sale Order should also require Debtors to coordinate the timing of such factory reset with Qorvo and Qorvo shall be

entitled to have a designated representative observe same.

15.    Finally, the Cure Notice is problematic because it identifies 268 contracts that Debtors may or may not determine to assume in connection with the sale.  Qorvo has reviewed the list and has annotated with a "*" every contract that appears on its face to likely include the transmission of Enjoined Information.  Those contracts should not be permitted for assumption and assignment unless Qorvo is provided the opportunity to verify that Enjoined Information has been excluded.  An annotated copy of Schedule 1 to the Cure Notice is attached.

16.    For the reasons set forth above, Qorvo objects to any Sale Order that does not include the adequate protection and safeguards proposed by Qorvo discussed herein.

[*remainder of the page left intentionally blank*]

Dated:  April 23, 2025
       Wilmington, Delaware

Respectfully submitted,

**PASHMAN STEIN WALDER HAYDEN, P.C.**

By: */s/ David B. Stratton*
David B. Stratton (Del. I.D. No. 960)
John W. Weiss (Del. I.D. No. 4160)
Alexis R. Gambale (Del. I.D. No. 7150)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: jweiss@pashmanstein.com
      dstratton@pashmanstein.com
      agambale@pashmanstein.com

-and-

Leib M. Lerner (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com

-and-

Stephen M. Blank (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: stephen.blank@alston.com

*Attorneys for Qorvo, Inc.*