**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AKOUSTIS TECHNOLOGIES, INC., *et al.*[1] | Case No. 24-12796 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref No.: 176, 314, 315, 316, 384, 452, 453, 469 |

**DEBTORS' REPLY TO QORVO, INC.'S INITIAL SALE OBJECTION AND**
**OBJECTION TO NOTICE OF SECOND AMENDED CURE COSTS AND POTENTIAL**
**ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

Akoustis Technologies, Inc., Akoustis, Inc., RFM Integrated Device Inc. (with Akoustis Technologies, Inc., Akoustis, Inc., and RFM Integrated Device, Inc. collectively the "Akoustis Entities") and Grinding and Dicing Services, Inc. ("GDSI") (each, a "Debtor" and collectively, the "Debtors"),[2] respectfully submit this reply (the "Reply") to *Qorvo, Inc.'s Initial Sale Objection and Objection to Notice of Second Amended Cure Costs and Potential Assumption and Assignment of Executory Contracts* [D.I. 418] (the "Objection"). In support of this Reply, the Debtors respectfully state as follows:

**BRIEF INTRODUCTION**

Simultaneously, the Debtors have engaged in (i) a robust sale and marketing process to identify and consummate transactions which will provide the highest and best value to the bankruptcy estates, and (ii) a cleanse and remediation process to ensure that none of Qorvo's Enjoined Information (as defined in the Injunction) is transferred during any of the contemplated sales. After an auction, the Debtors hereby present to the Court two going-concern transactions

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Akoustis Technologies, Inc. (9046), Akoustis, Inc. (5617), Grinding and Dicing Services, Inc. (7929), and RFM Integrated Device Inc. (1138). The Debtors' corporate headquarters is located at 9805 Northcross Center Court, Suite A, Huntersville, NC 28078.

[2] Terms not otherwise defined in this Response have the meanings attributed to them in the Objection.

which will provide recoveries to the estate in excess of $35 million while still retaining the majority of the Debtors' employees.  The Debtors submit that it is in the best interests of the estate for the Court to approve those proposed sales. Moreover, the Debtors submit that the terms of those sales, when combined with the thorough cleanse and remediation process, ensure that no Enjoined Information will be transferred. As more specifically set forth below, the Debtors request the Court overrule Qorvo's objections and approve the transactions.

## BACKGROUND

### I.    The Bankruptcy Filing

1.    On December 16, 2025 (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court.

2.    The Debtors continue to operate their business and manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.    On December 30, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") [D.I. 93]. The U.S. Trustee has since filed two amendments to the appointment [D.I. 96 & 150].

4.    Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' business and capital structure is set forth in the *Declaration of Mark D. Podgainy in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 2] (the "First Day Declaration"), which is incorporated herein by reference.

## II.      *The Qorvo Litigation*

5.      Prior to the Petition Date, on October 4, 2021, Akoustis Inc. and Akoustis Technologies, Inc. (collectively "Akoustis") were named as defendants in a complaint filed by Qorvo, Inc. ("Qorvo"), in the United States District Court for the District of Delaware (the "District Court"), captioned as *Qorvo Inc. v. Akoustis Technologies, Inc.*, No. 1:21- cv-01417-JPM (the "Litigation"), alleging, among other things, patent infringement, false advertising, false patent marketing, and unfair competition. Qorvo sought to enjoin the Debtors from continuing the alleged infringement as well as monetary damages (including punitive and statutory enhanced damages).

6.      On May 17, 2024, the jury returned a verdict in favor of Qorvo with respect to counts alleging misappropriation of certain trade secrets and patent infringement, including an award of damages in the amount of $38.6 million (the "Jury Award"), and the District Court subsequently entered orders awarding attorney's fees and pre- and post-judgment interest to Qorvo.

7.      In addition to the Jury Award, the District Court also granted Qorvo a permanent injunction (the "Injunction"). On October 11, 2024 (though not entered on the docket until October 15, 2024), the District Court entered an order permanently enjoining the Debtors and related parties from possessing, reviewing, using, or disclosing certain information obtained from Qorvo (the "Qorvo Trade Secret Information"), offering, selling, or distributing products that were made using the Qorvo Trade Secret Information; or advertising, promoting, or offering services utilizing the Qorvo Trade Secret Information.

## III.     *The Bankruptcy Sale Process*

8.      The Debtors sought the Court's approval of bid procedures for a potential sale of substantially all of the Debtors' assets. *See Motion of the Debtors for Entry of Orders*

{1405.002-W0073518.3}

3

*(I)(A) Approving Bidding Procedures For The Sale of Substantially All Of The Debtors' Assets, (B) Authorizing The Debtors To Enter Into The Stalking Horse Agreement and To Provide Bidding Protections Thereunder, (C) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof, (D) Approving Assumption And Assignment Procedures, (E) Scheduling A Sale Hearing And Approving The Form And Manner Of Notice Thereof, And (F) Granting Related Relief; And (II)(A) Approving The Sale Of The Debtors' Assets Free And Clear Of Liens, Claims, Interests, And Encumbrances, (B) Approving The Assumption And Assignment Of Executory Contracts And Unexpired Leases, And (C) Granting Relied Relief* (the "<u>Bid Procedures</u>") [Bankruptcy D.I. 14].[3]  At the hearing on the Bid Procedures there was extensive testimony, by both the Debtors and Qorvo about how long it would take to review the proposed cleansed assets.

9.    After a two-day evidentiary hearing and further negotiation with Qorvo to revise the framework of the proposed order, the Bankruptcy Court entered the *Order (I)Approving Bidding Procedures For The Sale of Substantially All Of The Debtors' Assets, (II)Authorizing The Debtors To Enter Into The Stalking Horse Agreement and To Provide Bidding Protections Thereunder, (III) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof, (IV) Approving Assumption And Assignment Procedures, (V) Scheduling A Sale Hearing And Approving The Form And Manner Of Notice Thereof, And (VI)* (the "<u>Bidding Procedures Order</u>") [D.I. 176].

10.    The Bidding Procedures Order created a process whereby the Qorvo Trade Secrets would be removed from the Proposed Cleansed Data (as defined in the Bidding Procedures Order). To that end, the Debtors retained Stroz and TCDI to cleanse the Proposed Cleansed Assets; meanwhile, the Debtors provided all of the Proposed Cleansed Assets to Qorvo, who ran its own

---

[3] All references to "Bankruptcy" docket entries refer to the above-captioned Chapter 11 Cases.

{1405.002-W0073518.3}

323205103.1

independent and parallel process. Throughout the cleanse process, in an effort to reduce the reviewed material, Akoustis voluntarily removed certain data and documents from the Proposed Cleansed Assets. For example, on March 11, 2025, the Debtors verbally informed Qorvo that Akoustis Inc. and Akoustis Technologies, Inc. would no longer be selling its trimming process and sent written confirmation via email on March 12, 2025.

11.     Pursuant to the Bidding Procedures Order a *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* was filed on January 16, 2025 (the "Cure Notice") [D.I. 208]. The Cure Notice was amended and/or supplemented on March 27, 2025 (the "Amended Cure Notice") [D.I. 388], April 18, 2025 (the "Second Amended Cure Notice"), and April 24, 2025 (the "Supplemental Cure Notice").

12.     The Bidding Procedures Order was further amended on March 25, 2025 [D.I. 384] to revise certain dates and allow additional time for Qorvo and the Debtors to complete their remediation reports and the deadlines that followed from the exchange of those reports.

13.     Qorvo and the Debtors timely exchanged their remediation reports on March 28, 2025.

14.     On April 17, 2025, the Court held a hearing on the Debtors' cleanse process and Qorvo's objection to the sale of certain documents, including documents it had not reviewed. Qorvo presented lists of the data which it contended should be remediated, as well as the data it had not been able to review. *See* Qorvo Exhibits 10, 11, 12, 48 and 49 from the Trade Secret Objection Hearing on April 17, 2025.[4]

---

[4] The Exhibits were marked as confidential and shall not be attached hereto.

{1405.002-W0073518.3}

15.     On April 18, 2025,[5] the Court issued a letter ruling (the "Letter Ruling"). [D.I. 453]. The Letter Ruling allows the Debtors to sell assets that were reviewed but not objected to during the cleansing process. However, the Debtors cannot sell the following categories of assets without Qorvo's consent (collectively, the "Disputed Data"):

> a.    Data Qorvo identified for remediation concerning Qorvo BAW filter and resonator designs, sixteen trade secrets) and Group 3 (Qorvo's trimming methods and procedures, three trade secrets);
>
> b.    Documents withheld from Qorvo because of confidentiality concerns;
>
> c.    Any documents Qorvo had not reviewed as of April 17, 2025; and
>
> d.    Files and folders that may be on external devices.

16.     The Debtors will not sell assets that are within the above-listed groups unless they specifically have Qorvo's consent to do so.[6]   Indeed, as described below, the Debtors' remediation process is designed to ensure that Disputed Data is not included in any Transferred Assets.

17.     On April 25, 2025, the Debtors conducted an auction sale of their assets (the "Auction"). After extensive bidding by seven Qualified Bidders, two winning bids (collectively, the "Transactions") were announced: (i) a going-concern purchase of all of the cleansed assets of Akoustis and RFMI assets by Tune Holdings Corp. ("Tune") for a purchase price of $30.2 million in cash plus, among other things, Tune's assumption of up to $3,000,000 in post-petition accounts payable; and (ii) a going-concern purchase of all of the cleansed assets of GDSI by Silitronics Solutions, Inc. ("Silitronics") for a total purchase price of $6,000,000, prior to reduction in respect of assumed liabilities. *See Notice of Successful Bidders in Connection with the Sales of Debtors'*

---

[5] Because April 18 was a court holiday, the Letter Ruling was not formally docketed on April 21, 2025.
[6] Akoustis has reached out to Qorvo regarding the sale of certain assets that were not included in the cleanse. The parties are attempting to resolve the issue amicably.
{1405.002-W0073518.3}

*Assets* [D.I. 479]. The Debtors submit that these two offers not only provide the highest and best economic return to the bankruptcy estates, but provide further benefit in the form of continued employment for most of the Debtors' employees.

18.    Both Transactions are specifically intended to comply with the cleanse process and the Letter Ruling. The Tune Asset Purchase Agreement (the "Tune APA") specifically excludes "all Qorvo Trade Secret Information" and "all Business Records except for the Cleansed Business Records". *See* Tune APA, Section 2.2. The Tune APA defines Qorvo Trade Secret Information to mean "collectively, (a) the 'Qorvo Trade Secret Information' identified in the seventh paragraph of the Permanent Injunction entered on the docket in the matter of *Qorvo Inc. vs. Akoustis Technologies, Inc.* DE Case 1:21-cv-01417-JPM on October 15, 2024, by the U.S. District Court for the District of Delaware and (b) all other documents that contain confidential Qorvo information (either indicated as Qorvo-confidential by the information itself or otherwise known to be Qorvo-confidential by Sellers) obtained or received by a Seller without Qorvo's authorization or in violation of any obligation to maintain the confidentiality of that information." Furthermore, the "Cleansed Business Records" means those Business Records that have undergone the Cleanse Process and been found in the Order entered by the Bankruptcy Court following the hearing on any Qorvo Trade Secret Objections (as defined in the Bid Procedures Order) scheduled for April 17, 2025, to be "cleansed".  The defined terms Intellectual Property and Personal Property in the Tune APA are also limited to items that have undergone the Cleanse Process. The Silitronics Asset Purchase Agreement will only be consummated upon order of the Court and with Qorvo's consent.[7] There are certain assets that the Debtors have requested Qorvo to review that may not

---

[7] This remains true if the Debtors must move to the back-up bid as well.

{1405.002-W0073518.3}

323205103.1

have been included in the original cleanse process. However, as required by the Letter Ruling, the Debtor will not sell those assets without Qorvo's consent.

## ARGUMENT

### I. The Debtors' Remediation Process Protects the Enjoined Information

19.     The Akoustis Entities have undergone a robust remediation process. During the cleanse process, Qorvo and the Akoustis Entities identified specific data files and folders to be remediated.  Any file or folder identified for remediation either by the Debtors and/or by Qorvo will not be included in the assets provided to the Successful Bidders unless Qorvo has consented. Similarly, any assets that were not included in the cleanse or that Qorvo did not have time to review during the cleanse, will not be provided to the Successful Bidders unless Qorvo has consented. The Debtors further will provide Qorvo with the Successful Bidders' Asset Purchase Agreements to appease Qorvo's concerns on the scope of assets being sold.

20.     As of April 25, 2025, employee access to the Debtors' systems was terminated for all but four Akoustis Entities employees, Kamran Cheema, Jonathan Guerrier, Greg Seymour, and James Spickler, whose access will be terminated on April 28, 2025.  Access was terminated by confiscating  company owned computers/laptops (from which hard drives are being removed and sequestered by Stroz); confiscating personal or external devices, if any; sending remote wipe commands to their mobile devices  to remove all the Akoustis Entities' data stored on the mobile devices and to remove their ability to connect to the Akoustis Entities' systems from their mobile devices; and preventing access to any of the Akoustis Entities' data, including data stored on the Debtors' servers. Data stored in cloud resources was limited to only administrative accounts and access was prevented by Debtors' employees, excluding the four employees having access to M365 cloud resources. The remaining four employees will have limited access to company

{1405.002-W0073518.3}

323205103.1

computers to assist with payroll and other company obligations until April 28, 2025, when their computers will be confiscated and their access will be similarly terminated.  One laptop without access to the Akoustis Entities' servers will be used after April 28, 2025 by financial executives CFO Kenneth Bollar and Financial Transformation Officer Mark Podgainy to access bank accounts and report on financial obligations over a web browser but without any access to the Akoustis Entities' servers or data unless other agreement is reached with Qorvo. This laptop was freshly imaged by Stroz and therefore does not contain any user created data and will not be able to access any of the Akoustis Entities' resources. On April 28, 2025, unless other agreement is reached with Qorvo all employee access to the Debtor's M365 resources will be terminated.

21.    New servers were installed by the Akoustis Entities and Stroz will remediate them by April 28, 2025 to exclude all data as instructed by TCDI and Qorvo (the "Clean Servers"). The Clean Servers will be turned over to the Successful Bidders.

22.    All employees of the Akoustis Entities and GDSI have been interviewed regarding whether they hold any potential Qorvo property on paper, the Debtors' devices, or personal devices, and have been instructed about the Injunction restrictions and the employees need to comply with the Injunction. To the extent an employee held potential Qorvo property, it has been confiscated by Stroz or K&L Gates. All employees of the Akoustis Entities further signed declarations stating they understand they are subject to the Injunction, and should they later discover potential Qorvo property they may not use and must immediately turn such information over to K&L Gates LLP for remediation.

23.    Additionally, all paper potentially containing Qorvo information was collected from each of the Akoustis Entities offices. The paper will be held by third party document storage contractors until they are instructed by counsel to destroy the paper.

24.     To the extent that the Successful Bidders accidentally receive Qorvo's property – that is an issue between Qorvo and the Successful Bidders. The sale free and clear is only of cleansed property and property that Qorvo has consented to the sale of. However, Qorvo cannot re-litigate what constitutes cleansed property in the future or renege on its consent. If Qorvo did not object to the sale of a cleansed asset or an uncleansed asset that it gave affirmative consent to selling, then Qorvo cannot argue in the future that the Successful Bidder's ownership or use of the asset or items derived from the asset violates the Injunction or its intellectual property rights. As discussed above, the Debtors have taken steps to further eliminate the ability of a noncompliant employee to provide Qorvo's trade secrets to the Successful Bidders.

25.     Similarly, Qorvo's objection requests a factory reset of all machinery; however, Qorvo previously agreed that certain machinery need not be factory reset and that certain other machinery would be remediated of certain files only. To the extent that Qorvo previously agreed certain machinery need not be factory reset – especially the machinery that specifically went through the cleanse process, Qorvo cannot now change its position. Reset and remediation of machinery that Qorvo and Akoustis previously agreed should be reset or remediated has already begun and will be completed by April 28, 2025. The machinery that is not reset, remediated, or agreed that no reset or remediation is needed will not be sold.

## II.     *The Sale Does Not Include Qorvo's Trade Secrets*

26.     The Transactions have specifically been constructed not to include any Enjoined Information. The Tune Asset Purchase Agreement (the "Tune APA") specifically excludes "all Qorvo Trade Secret Information" and "all Business Records except for the Cleansed Business Records". *See* Tune APA, Section 2.2. The Tune APA defines Qorvo Trade Secret Information to mean "collectively, (a) the 'Qorvo Trade Secret Information' identified in the seventh paragraph

of the Permanent Injunction entered on the docket in the matter of *Qorvo Inc. vs. Akoustis Technologies, Inc.* DE Case 1:21-cv-01417-JPM on October 15, 2024, by the U.S. District Court for the District of Delaware and (b) all other documents that contain confidential Qorvo information (either indicated as Qorvo-confidential by the information itself or otherwise known to be Qorvo-confidential by Sellers) obtained or received by a Seller without Qorvo's authorization or in violation of any obligation to maintain the confidentiality of that information." Furthermore, the "Cleansed Business Records" means those Business Records that have undergone the Cleanse Process and been found in the Order entered by the Bankruptcy Court following the hearing on any Qorvo Trade Secret Objections (as defined in the Bid Procedures Order) scheduled for April 17, 2025, to be "cleansed".

27.    The Silitronics Asset Purchase Agreement will only be consummated upon order of the Court and with Qorvo's consent.[8]

28.    Similarly, the back-up bids do not contemplate the sale of any non-cleansed data, or data that Qorvo has not or will not consent to the sale of.

### III.    Qorvo's Objections are Without Merit

29.    Prior to the Auction, Qorvo filed its Objection [D.I. 469]. The Objection raises four main concerns: (i) a purported lack of transparency into the proposed sale transaction; (ii) a demand for a pre-closing audit of the Debtors' remediation efforts; (iii) demand for a post-closing audit right over the Successful Bidders; (iv) inclusion of language in the sale order specifying that, to the extent any Disputed Data is erroneously included in such a Sale Transaction, such Disputed Data remains subject to the Injunction and is not being sold free and clear of any liens, claims, or

interest pursuant to Section 363(f) of the Bankruptcy Code; and (v) an objection to the assumption and assignment of certain contracts on the grounds that the contracts contain Enjoined Information. None of these arguments should preclude the approval and closing of the sales to Tune or Silitronics.

### a.    Qorvo' Has Full Transparency into All Transaction Terms

30.    The Debtors acknowledge that the deadline for Qorvo's Objection was prior to the Auction. Since the Auction, however, Qorvo has been provided transparency into the bidders' identities and transaction terms.  *See Notice of Successful Bidders in Connection with the Sales of Debtors' Assets* [D.I. 479] filed on April 26, 2025. Debtors note that none of the winning bidders or the back-up bidders includes an insider, as defined in 11 U.S.C. § 101(31), or Daeho Kim as part of the bid group.

31.    Moreover, the Debtors continue to work with Qorvo and implement Qorvo's requests with respect to the remediation of all tools and equipment that was determined to contain Disputed Data.

32.    In short, Qorvo has received the information to which it is entitled. This portion of Qorvo's Objection is moot.

### b.    Qorvo is Not Entitled to a Pre-Closing Audit

33.    The Debtors note that the Bidding Procedures Order does not provide Qorvo with any right to conduct a pre-closing audit of the Debtors' remediation efforts. That function is left to the Debtors, who will rely on their professionals at Stroz Friedberg.

34.    That said, the Debtors will discuss with Qorvo whether there can be a limited audit of the remediated tools and data, so long as such audit (and any procedures coming from such audit) can be completed prior to the closing date for each Transaction.

{1405.002-W0073518.3}

323205103.1

### c.    *Qorvo is Not Entitled to Adequate Protection on a Go-Forward Basis*

35.    Qorvo has no basis in law or fact for its demand to conduct post-closing audits of the Purchasers.

36.    First, Qorvo has no interest in the property to be sold. As described above, the Transactions will not include any Enjoined Information or Disputed Data. Thus, because Qorvo's does not have an interest in the property being sold, Qorvo is not entitled to adequate protection. *See* 11 U.S.C. 363(e) ("Notwithstanding any other provision of this section, at any time, on ***request of an entity that has an interest in property*** used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." (emphasis added) Indeed, the cases cited by Qorvo are inapposite in support of adequate protection or prevention of this sale because they deal with the use or sale of property that the party had a continuing property interest in at the time of the requested use or sale. *See In re Leroy Bohne*, 57 B.R. 461, 462-464 (Bankr. D.N.D. 1985) (postpetition calves of prepetition secured livestock could not be offered as adequate protection for use of proceeds from sale of livestock); *Dishi Sons, v. Bay Condos LLC et al., (In re Bay Condos LLC)*, 510 B.R. 696, (S.D.N.Y. 2014) (discussing adequate protection for a lessee that had a continuing property interest); *Illinois Dep't of Rev. v. Hani Bank*, 895 F.3d 465 (7th Cir. 2018) (discussing a creditors' statutory interest in collecting taxes from a purchaser of the debtors' property but ultimately affirming the bankruptcy courts' value of its interest as zero for purposes of the creditors' right to adequate protection). Furthermore, in *Pinnacle Restaurant at Big Sky, LLC et al., v. CH SP Acquisitions, LLC et al. (In re Spanish Peaks Holdings II, LLC)* 872 F.3d 892 (9th Cir. 2017), the appellate court affirmed the sale of property free and clear of a tenants' leasehold statute because the tenant had not objected to the sale free and clear of its

leasehold interest. Debtors further note that Qorvo has the burden of proving the validity, priority and extent of its interest in the assets. *See* 11 U.S.C. § 363(p) ("the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest."). Here, the entire purpose of the cleanse process was to eliminate any Enjoined Information from the Transactions. Indeed, Qorvo itself has conducted a review of the Proposed Cleansed Assets, and the Letter Ruling granted Qorvo's demand that none of the Disputed Data be included. Simply put, Qorvo has no interest in the transferred assets because the Disputed Data will be remediated and not sold.

37.    Second, neither the Bankruptcy Code nor the Injunction provides a basis for Qorvo to obtain a go-forward audit right of the purchasers. The cases cited by Qorvo under 11 U.S.C. §363(e) do not provide a basis for Qorvo's requested relief. Qorvo relies on *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577 (Bankr. D. Ariz. 2009), where the court prohibited the sale of a National Hockey League team where the court could not provide adequate protection of the National Hockey League's interest in the leagues bylaws as part of the sale for the proposition that Qorvo should receive adequate protection. In short, the specific language of the NHL's agreement provided a basis for the league to regulate those matters going forward. Here, however, the Injunction only relates to Akoustis Inc. and Akoustis Technologies, Inc. Nothing in the Injunction expands Qorvo's audit rights to third-party purchasers if the property is sold, inside or outside of bankruptcy proceedings. Rather, the audit right in the Injunction is the right to audit the databases of the Debtors – not a continuing audit right of the property itself. Moreover, Qorvo does not contend that the assets the Debtor plans on selling will affect its interests; rather, Qorvo posits that the Debtors or their former employees may accidentally transfer data the Debtors do not intend to sell. This is a completely hypothetical situation. Adequate protection is based on a property

14

interest, not on a hypothetical issue that the Debtor is taking steps to prevent. Nothing being sold is being sold in violation of the Letter Ruling or without Qorvo's consent. Thus, Qorvo has no need for, or right to, adequate protection.

38.     Third, the cleanse and resulting Letter Ruling adequately protected Qorvo's rights. Section 363(e) only prevents or conditions the sale of property "as is necessary to provide adequate protection of such interest." Qorvo argues *Magness et al. v. Dayton Country Club Company (In re Magness)*, 972 F.2d 689 (6th Cir. 1992) stands for the proposition it should get adequate protection for its non-economic interest. However, the cleanse process already provided adequate protection. Qorvo was allowed to review everything that is being sold. Pursuant to the Letter Ruling, if Qorvo has not reviewed and/or consented to the sale of the asset, the asset cannot be sold.    In *In re Magness*, the Court found a chapter 7 trustee could not assume and assign a debtors' golf membership considering the interest held by others in the property waiting on a waiting list for that membership. Here, the Debtors are not selling Qorvo's Enjoined Property – which Qorvo has confirmed through the cleanse and its ability to prevent the sale of assets it has not reviewed or consented to. Thus, there is no property interest at issue to be protected.

39.     While the Debtors do not concede that Qorvo is entitled to adequate protection, since the Objection was filed the Debtors and Qorvo have had further discussions with Qorvo regarding potential solutions to resolve Qorvo's concerns that do not include a continuing audit of the Successful Bidders.

### d.    *Qorvo Has Had Opportunity to Review All Assigned Contracts*

40.     Finally, Qorvo objected to the assumption and assignment of certain contracts. The Debtors provided Qorvo with copies of those contracts on April 24, 2025, as noted in the Debtors' *Notice of Production in Response to Qorvo, Inc.'s Initial Sale Objection and Objection to Notice*

*of Second Amended Cure Costs and Potential Assumption and Assignment of Executory Contracts.*[9] The Debtors do not believe the contracts have any Enjoined Information in them; however, to the extent Qorvo has concerns with those contracts after their review, the Debtors will work with Qorvo to resolve those issues.

## CONCLUSION

The Debtors have remediated the assets they intend to sell to the non-insider bidders. Qorvo does not have a continuing interest in the assets the Debtors are selling. Thus, the Court should allow the sale of the cleansed and consented to assets to go forward free and clear.

---

[9] Many of these contracts were previously provided to Qorvo during the cleanse. However, for ease of reference for both the Debtors and Qorvo, the Debtors provided a separate link with the contracts Qorvo flagged for review.
{1405.002-W0073518.3}

16

323205103.1

Dated:  April 27, 2025
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Joshua B. Brooks*
Matthew B. McGuire (No. 4366)
Matthew R. Pierce (No. 5946)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Email:        mcguire@lrclaw.com
              pierce@lrclaw.com
              brooks@lrclaw.com

- and -

**K&L GATES LLP**
Jeffrey T. Kucera (admitted *pro hac vice*)
Carly S. Everhardt (admitted *pro hac vice*)
Southeast Financial Center, Suite 3900
200 South Biscayne Blvd.
Miami, Florida 33131
Telephone:    (305) 539-3300
Email:        jeffrey.kucera@klgates.com
              carly.everhardt@klgates.com

- and –

Margaret R. Westbrook (admitted *pro hac vice*)
301 Hillsborough Street, Suite 1200
Raleigh, North Carolina 27603
Telephone:    (919) 743-7300
Email:        margaret.westbrook@klgates.com

*Counsel to the Debtors and Debtors in Possession*