## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| | § | |
| AKOUSTIS TECHNOLOGIES, INC.,[1] | § | Case No. 24-12796 |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | **Re. D.I. 176, 314, 315, 316, 384, 452, 453, 469 & 480** |

### QORVO, INC.'S SUPPLEMENTAL SALE OBJECTION AND OBJECTION TO SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

Qorvo, Inc. ("Qorvo"), through its undersigned counsel, hereby files this supplemental sale objection (the "Objection") pursuant to the order approving the bidding procedures [D.I. 176] (as amended, the "Bidding Procedures Order") and Debtor's *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of Substantially All Assets* [D.I. 474] ("GDSI Cure Notice").[2] The factual background set forth in *Qorvo, Inc.'s Trade Secret Objection* [D.I. 405, 418] and the related declaration [D.I. 406, 419] are incorporated herein by reference. Qorvo's *Initial Sale Objection and Objection to Notice of Second Amended Cure Costs and Potential Assumption and Assignment of Executory Contracts* [D.I. 469] ("Initial Objection"), and all arguments therein, are also incorporated herein by reference. Qorvo respectfully represents as follows:[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Akoustis Technologies, Inc. (9046), Akoustis, Inc. (5617), Grinding and Dicing Services, Inc. (7929), and RFM Integrated Device Inc. (1138). The Debtors' corporate headquarters is located at 9805 Northcross Center Court, Suite A, Huntersville, NC 28078.

[2] Docket references to the United States Bankruptcy Court for the District of Delaware shall be delineated as "[D.I. #]" and docket references to United States District Court for the District of Delaware shall be delineated as "[Del. D.I. #]."

[3] Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the Bidding Procedures Order or the Initial Objection, as applicable.

## **OBJECTION**

1.      Qorvo, as the largest unsecured creditor in these Chapter 11 Cases, is supportive of the proposed sale transactions, provided that Qorvo is afforded a reasonable, real-world opportunity to ensure that the property actually being transferred to any buyer complies with the Letter Ruling and Injunction, and excludes all Enjoined Information and Disputed Data. Absent such protections, Qorvo continues to object to any proposed sale order that fails to strictly comply with the Injunction and the Letter Ruling, and which does not protect Qorvo's rights. Qorvo was informed on April 28, 2025 that, because Debtors failed to cleanse data and information in the possession of Debtor Grinding and Dicing Services, Inc. ("GDSI"), the Debtors now maintain that the sale of that business cannot proceed absent Qorvo's consent, and that such sale of GDSI would not be heard at the April 30th hearing.  Nonetheless, the objections and arguments herein, and in the Initial Objection, apply to any proposed sale of GDSI as well, and Qorvo reserves the right to supplement its objection to reflect the fluidity of the situation regarding GDSI.

2.      Qorvo seeks basic protections to ensure that the Letter Ruling and Injunction are complied with in all respects. These safeguards are necessary and appropriate. The Debtors and Qorvo just spent months and millions of dollars litigating what the Debtors can actually sell. After a time-consuming and expensive evidentiary hearing, this Court entered the Letter Ruling, making clear that Disputed Data cannot be sold absent consent. Qorvo needs the ability to ensure that the Debtors comply with the Letter Ruling.

3.      Furthermore, even now, the contours and scope of what Debtors seek to sell remain fluid.  For example, Debtors previously told this Court and Qorvo that they were not selling any "trimmed" products in any of the sales sought to be approved on April 30, 2025, but might be selling untrimmed inventory. As of April 27, 2025, Qorvo learned that might not be the case, and

that inventory may be sold. Then on April 28, 2025, Qorvo was informed by Debtors' counsel that no inventory (trimmed or un-trimmed) will be sold, and all existing inventory will be destroyed. While that change solves at least any potential going-forward sales that violate Qorvo's '755 patent, many other issues remain uncertain and, as of April 28, 2025, the Debtors are still trying to ascertain how much data is being sold and identifying documents and information to Qorvo. This is made all the more difficult given that no APA has been filed.

4.      Given the factual background and current status of these cases and constantly changing landscape of what the Debtors are seeking to sell, Qorvo needs the ability to confirm for itself that the Letter Ruling is followed and Qorvo data and information is not sold. Qorvo learned definitively via the Debtors' Reply that the Debtors will be providing Clean Servers (as defined in the Debtors' Reply) to the Successful Bidders. Qorvo should be entitled to a reasonable period of time to ensure the Clean Servers (and any other to-be-provided servers and other data and information) conform to the Letter Ruling and exclude the Disputed Data and Enjoined Information consistent therewith. Qorvo has been in discussion with Debtors regarding an appropriate period of time to examine the Clean Servers and those conversations remain ongoing.

5.      Qorvo must also be provided an opportunity to inspect the equipment and machinery that Debtors propose to sell to ensure that, absent Qorvo's consent, the equipment and machinery have been factory reset or remediated. The parties have exchanged lists (as late as April 28). The Bidding Procedures Order generally contemplated a process that provided reasonable inspection and Debtors have provided no justification for veering away from that process.

6.      The Debtors' arguments in their *Reply to Qorvo's Initial Objection* [D.I. 480] ("Debtors' Reply") are unpersuasive. Among other things, the Debtors' Reply (i) takes issue with Qorvo's request for "audit" rights, (ii) suggests Qorvo should not be adequately protected and (iii)

insinuates that Qorvo re-traded on its agreement that certain machinery and equipment need not be reset to factory settings. These arguments rely on semantics, are unavailing, and ignore what is actually being requested – (i) reasonable verification that (1) the Letter Ruling is complied with and (2) purchased assets do not inadvertently include any Disputed Data or Enjoined Information that the parties agree should not be sold, (ii) a  mechanism to ensure that if Disputed Data or Enjoined Information is erroneously transmitted to a purchaser, the purchaser must destroy or return such information, (iii) assurance that machinery and equipment sold is treated as required pursuant to the Bidding Procedures Order and any additional agreement for accommodation between the parties,[4] and (iv) language making clear that Qorvo waives none of its rights with respect to its intellectual property, trade secrets, the Enjoined Information and Disputed Data.

7.      In fact, the arguments in Debtors' Reply further justify Qorvo's need for protections.  Among other things, the Debtors argue that the Letter Ruling's finding that the Disputed Data cannot be sold necessitates that Qorvo has no interest in the property to be sold, and thus Qorvo has no right to adequate protection under Section 363(e).  Debtors' Reply, ¶ 37. Repeating the mantra that the assets to be sold exclude all Disputed Data and comply with the Letter Ruling is not enough to show the Court or Qorvo that the Debtors have complied with their legal requirements set forth in the Letter Ruling.  Indeed, the Debtors actually admit the possibility that Qorvo's property will be transferred to the buyer in the Debtors' Reply: "To the extent that the Successful Bidders accidentally receive Qorvo's property – that is an issue between Qorvo and the Successful Bidders." Debtors' Reply, ¶ 24. As such, Qorvo needs reasonable guardrails to oversee the actual transfer of information and data.

---

[4]      Indeed, Debtors informed Qorvo for the first time at approximately 8 pm ET on April 28 that some machinery was previously sold without any cleanse, and that there was no discernable record as to when those machines were sold or any other information.

8.      Additionally, as part of the Initial Objection, Qorvo objected to the Cure Notice as problematic because it identified 268 contracts that Debtors may or may not determine to assume in connection with the sale.  Qorvo reviewed the list and annotated with a "*" every contract that appeared on its face to likely include the transmission of Enjoined Information.  On April 24, Debtors provided Qorvo with approximately 200 contracts to review in a last-minute effort to provide this information in advance of the April 30, 2025 sale hearing.

9.      Qorvo will review such contracts, but a reasonable review requires time and Qorvo cannot guaranty completion of its review by the sale hearing on April 30th.  In any event, the burden is on the Debtors to show that such contracts do not implicate the Injunction or the Letter Ruling, and Debtors have offered no such proof.  As such, absent Qorvo's consent, no assignment of any executory contract should be permitted if the applicable executory contract implicates, involves or otherwise serves as a conduit for Enjoined Information.  If the subject matter of the underlying contract cannot be sold, then the contract should not be permitted to be assigned.  There should be no "back-door" violations of the Letter Ruling or the Injunction.

10.     To facilitate a consensual hearing, Qorvo requests the below bulleted language be inserted into any sale order, and that the concomitant actions be authorized and ordered to facilitate the sales. The Debtors have been made aware of the below requests (and the parties have also discussed other additions to the sale order, including with respect to allowance of Qorvo's claim and dismissal of pending appeals before the Delaware District Court to streamline the rest of the case), and the parties remain in discussion.  Qorvo's requested language is:

- The Debtors and each Successful Bidder acknowledge and agree that Qorvo reserves all rights with respect to Qorvo's property, Disputed Data and Enjoined Information, and that the Injunction continues to apply with respect to the Debtors and all persons and entities

encompassed by the Injunction.

- Notwithstanding anything to the contrary in an applicable [APA], the [Purchased Assets or equivalent defined term] shall not include any Enjoined Information or Disputed Data, and to the extent any [Purchaser] receives or discovers such Enjoined Data or Disputed Data in its possession, it shall promptly inform Qorvo of such receipt or discovery, and turn such data or information over to Qorvo or otherwise destroy such information to the satisfaction of Qorvo.

- Notwithstanding anything to the contrary in an applicable [APA], the [Purchased Assets or equivalent defined term] shall not include any existing inventory or products, in any state of manufacture (including whether trimmed or un-trimmed) (collectively, the "Existing Inventory") and all such Existing Inventory shall be destroyed, to Qorvo's satisfaction within 14 days of entry of this order, unless otherwise agreed to by Qorvo.

- Debtors shall deliver to Qorvo, by no later than May 1, 2025, in a form and manner acceptable to Qorvo, all data and information that Debtors intend to sell to Tune (which may be accomplished through delivery of a server or servers (or otherwise produce any contemplated repositories for the to-be-sold data and information) that contain the complete set of data and information that Debtors intend to sell to Tune). Qorvo shall be provided no less than 21 days to review the server(s) and provided data and information and confirm Debtors' compliance with the Letter Ruling and Injunction.

- All machinery and equipment that Debtors intend to sell to Tune, unless otherwise agreed to by Qorvo, shall be subjected to a "factory reset" process to be completed by no later than May 1, 2025, which reset shall include the deletion of data related to the Debtors' products and/or processes stored in such machinery and equipment, where such data was not

provided by the manufacturer or supplier thereof, and reverted to factory settings, and Qorvo shall have 14 days to inspect the machinery and equipment to ensure that Debtors are in compliance, otherwise, such machinery and equipment may not be sold.

- No Executory Contract will be assumed or assigned to the extent that such Executory Contract depends upon, or otherwise relies upon, any Disputed Data, Enjoined Information or otherwise serves as a conduit for violation of the Injunction and/or the Letter Ruling.

- Debtors shall reimburse Qorvo out of the first sale proceeds, a cash payment in the amount of $175,000 as an expense reimbursement to be applied against Qorvo's expenses incurred in connection with the review of the sale of GDSI and potential Enjoined Information and Disputed Data in the possession of GDSI.

- All Enjoined Information and Disputed Data in Debtors' possession, including, without limitation, all data and information that it (i) not included in the sale to Tune or (ii) not part of the GDSI assets for sale, shall be (1) sequestered and held in escrow by a data repository company acceptable to both Debtor and Qorvo, and (2) ultimately destroyed at the earliest of the conclusion of this bankruptcy case or pursuant to further Court order.

11.     Finally, as referenced above, GDSI cannot be sold absent Qorvo's consent. On April 24, 2025, the eve of the auction, Debtors' counsel disclosed for the first time that virtually the entirety of the data and information in the possession of GDSI was never provided to Stroz – and thus not to Qorvo.  This wholesale failure of the Debtors to comply with this Court's Bidding Procedures Orders is emblematic of the problems inherent in approving a sale without Qorvo having the ability to verify what is actually being transferred and changing hands.  Because Debtors failed to cleanse any data or information in the possession of GDSI, it may not be sold absent Qorvo's consent.

4408b9484af10885

12.     Relatedly, on the evening of April 24, Debtors filed the GDSI Cure Notice, which lists, for the first time, 57 contracts, of which 36 specifically list GDSI as the Debtor counterparty. Debtors cannot be permitted to sell any contracts that relate to the sale of GDSI, related to documents and information in GDSI's possession or otherwise serve as a conduit for the potential transmission of documents and information in violation of the Injunction and the Letter Ruling.

13.     The Debtors acknowledge that they cannot sell GDSI (or its assets) without Qorvo's consent. *See* Debtors' Reply, ¶ 18 and 27.  Qorvo has presented its requirements to Debtors, and the parties continue to discuss potential resolution.  Qorvo remains motivated to continuing constructive discussions to facilitate a GDSI sale, while protecting Qorvo's rights.

14.     In conclusion, given the history, past events, litigation and continuing developments regarding the potential scope of the sales, this is not a "trust me" situation.  Qorvo needs time and the opportunity to see the process through to ensure that the Injunction and Letter Ruling are being complied with in all respects. As such, Qorvo continues to object to any sale and Sale Order that does not provide the reasonable protections discussed herein.

Dated:  April 29, 2025
             Wilmington, Delaware

Respectfully submitted,

**PASHMAN STEIN WALDER HAYDEN, P.C.**

By: */s/ David B. Stratton*
David B. Stratton (Del. I.D. No. 960)
John W. Weiss (Del. I.D. No. 4160)
Alexis R. Gambale (Del. I.D. No. 7150)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: jweiss@pashmanstein.com
         dstratton@pashmanstein.com
         agambale@pashmanstein.com

-and-

Leib M. Lerner (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com

And

Stephen M. Blank (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: stephen.blank@alston.com

*Attorneys for Qorvo, Inc.*