# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AKOUSTIS TECHNOLOGIES, INC., *et al.*,[1] | Case No. 24-12796 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 14, 15, 115, 121, 124, 125, 176, 208, 384, 388, 452, 453, 469, 474, 479, 480, 499, 500, 501 & [___]** |

**ORDER (I) APPROVING THE SALE OF ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS**
**AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION**
**AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into the Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 14] (the "Sale Motion"),[2] filed by the debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Akoustis Technologies, Inc. (9046), Akoustis, Inc. (5617), Grinding and Dicing Services, Inc. (7929), and RFM Integrated Device Inc. (1138).  The Debtors' corporate headquarters is located at 9805 Northcross Center Court, Suite A, Huntersville, NC 28078.

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion or the Asset Purchase Agreement (as hereinafter defined), as applicable.

Cases"), seeking entry of an order (this "<u>Order</u>"), pursuant to sections 105, 363 and 365 of title 11

of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007, 9008 and 9014

of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 6004-

1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"); and the Court having

previously entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All*

*of the Debtors' Assets, (II) Authorizing the Debtors to Enter into Stalking Horse Agreement and*

*to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form*

*and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V)*

*Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI)*

*Granting Related Relief* [Docket No. 176], as amended on March 25, 2025 [Docket No. 384] (the

"<u>Bidding Procedures Order</u>"); and an auction (the "<u>Auction</u>") having been held on April 25, 2025

at 11:00 a.m. (prevailing Eastern Time) in accordance with the Bidding Procedures Order; and

Tune Holdings Corp. (the "<u>Purchaser</u>"), a wholly-owned subsidiary of Space Exploration

Technologies Corp. ("<u>SpaceX</u>"), having submitted the highest or otherwise best bid for the

Transferred Assets, as reflected in that certain Asset Purchase Agreement, dated as of April 25,

2025, by and among Purchaser, SpaceX (as guarantor), Akoustis Technologies, Inc., Akoustis,

Inc., and RFM Integrated Device Inc. (as amended, supplemented, or modified from time to time

prior to entry of this Order, the "<u>Asset Purchase Agreement</u>"), a copy of which is attached hereto

as <u>Exhibit 1</u>; and the Court having conducted a hearing to consider certain relief requested in the

Sale Motion on April 30, 2025 (the "<u>Sale Hearing</u>"), at which time all objecting and interested

parties were offered an opportunity to be heard with respect to the Sale Motion with respect to the

approval of the Asset Purchase Agreement; and the Court having reviewed and considered (i) the

Sale Motion, (ii) the Asset Purchase Agreement, (iii) the Bidding Procedures, (iv) the Bidding Procedures Order, (v) the record of the Bidding Procedures Hearing, (vi) the *Declaration of Michael Pokrassa in Support of Motion of the Debtors for Entry of Orders (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 500], (vii) the *Declaration of Mark D. Podgainy in Support of Motion of the Debtors for Entry of Orders (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 499], (viii) the *Declaration of Michael Perry in Support of Motion of the Debtors for Entry of Orders (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 508] (the "Perry Declaration"); (ix) the *Declaration of John Cotter in Support of Motion of the Debtors for Entry of Orders (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 501]; (x) the Letter Ruling dated April 18, 2025 [Docket No. 453] (the "Letter Ruling"); and (xi) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient, and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of the Bankruptcy Code, Rules 2002, 4001, 6004, 6006, 9007, 9008 and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules.

D.    <u>Notice and Opportunity to Be Heard</u>.  As evidenced with the certificates of service filed with the Court [Docket Nos. 85, 137, 207, 218, 247, 396, 415, 460, 470], the Debtors have provided proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, the Auction, the Sale Hearing, the sale of the Transferred Assets pursuant to the Asset Purchase Agreement (the "<u>Sale Transaction</u>") free and clear of any Interests (as hereinafter defined) within the meaning of section 363(f) of the Bankruptcy Code, the Notice of Auction Results [Docket No. 479], the Assumption and Assignment Notices [Docket Nos. 208, 388, 452,

---

[3]  The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

474], and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Purchaser at Closing pursuant to this Order and the terms of the Asset Purchase Agreement (collectively, the "Contracts"), in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and 9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Sale Notice Parties (as defined in the Bidding Procedures) and all other persons and entities as directed by the Court.  Such notice was good, sufficient, and appropriate under the circumstances, including but not limited to providing each Counterparty a full and fair opportunity to object to the assumption and assignment of its Contract and its proposed Cure Cost; and no other or further notice of any of the foregoing is required.  With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Publication Notice published in the national edition of the Wall Street Journal on January 17, 2025 and in the Local Publications on January 17, 2025 was sufficient and reasonably calculated to provide notice to such parties under the circumstances.  The Debtors published the Sale Motion, Bidding Procedures Order, the Bidding Procedures, the Stalking Horse Agreement (and all exhibits and schedules thereto), the Sale Notice, the Assumption and Assignment Notices, the Asset Purchase Agreement, and certain other documents relevant to the Sale on the Stretto Website.

   E. Disclosures.  The disclosures made by the Debtors in the Sale Motion, the Sale Notice, the Assumption and Assignment Notices, the Notice of Auction Results, and all other related notices and documents filed with the Court concerning the Asset Purchase Agreement and Sale Transaction were complete and adequate.

F.      <u>Sound Business Purpose</u>.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion, and the approval of and entry into the Sale Transaction, the Asset Purchase Agreement, the Related Documents and any other ancillary agreements thereto, including, but not limited to, the Separation Agreements, (a) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (b) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates, and their stakeholders; and (c) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Sale Transaction and the Asset Purchase Agreement include, without limitation, the following: (a) the Asset Purchase Agreement constitutes the highest or otherwise best bid received for the Transferred Assets; (b) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Transferred Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (c) failure to consummate the Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor recoveries; and (d) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

G.      <u>Compliance with Bidding Procedures</u>.  The Debtors conducted an open and fair sale process.  The sale process was non-collusive in all respects, and all interested parties were provided a full, fair, and reasonable opportunity to make an offer to purchase the Transferred Assets.  The Debtors, the Purchaser, SpaceX and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order.

H.      <u>Highest or Otherwise Best Bid</u>.  The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties and, in consultation with the

Consultation Parties, that the Purchaser's Qualified Bid, as documented in the Asset Purchase Agreement, was the highest or otherwise best Qualified Bid for the Transferred Assets. Consummating the Sale Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

I.      <u>Fair Consideration</u>.   The consideration the Purchaser will pay under the Asset Purchase Agreement constitutes (a) fair and reasonable consideration for the Transferred Assets; and (b) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and other laws of the United States, any state, territory, possession thereof, or the District of Columbia.

J.      <u>Free and Clear Sale</u>.  The Debtors may sell the Transferred Assets free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Sale Transaction or the Sale Motion and that have an Interest on the Transferred Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f)—including, with respect to any Interest that is a Lien, that the price at which the Transferred Assets will be sold is greater than the aggregate value of all Liens on the Transferred Assets pursuant to section 363(f)(3)–and, therefore, are adequately protected by having their Interests on the Transferred Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the

consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates.  Any Interest holders that did not object, or that withdrew their objections, to the Sale Motion or the Sale Transaction, are deemed to have consented to the sale of the Transferred Assets free and clear of their respective Interests on the Transferred Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

K.    <u>Purchaser's Reliance on Free and Clear Sale</u>.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Transferred Assets were not free and clear of all Interests, or if the Purchaser would, or in the future could, be liable for any such Interests with respect to the Transferred Assets.  A sale of the Transferred Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates, and their creditors, and would yield substantially less value for the Transferred Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction.  The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order, as a good-faith purchaser pursuant to section 363(m) of the Bankruptcy Code, to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Transferred Assets free and clear of all Interests, including, without limitation, any potential derivative, vicarious, transferee or successor liability Interests.

L.    <u>Interests</u>.  As used in this Order, the term "<u>Interest</u>" includes, in each case to the extent against or with respect to any of the Debtors (other than Grinding and Dicing Services, Inc. ("<u>GDSI</u>")) or in, on, or against or with respect to any of the Transferred Assets: Liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits,

defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (a) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, condition sale arrangements, or any similar rights, (b) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (c) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (d) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Transferred Assets, or any similar rights; (e) any

rights under labor or employment agreements; (f) any rights under pension, multiemployer plan (as such term is defined in section 3(37), or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "<u>ERISA</u>")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (g) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (xii) the WARN Act (29 U.S.C. §§ 2101, *et seq.*) or any state or other laws of similar effect; (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (j) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract; (k) any other Excluded Liabilities under the Asset Purchase Agreement; and (l) Interests arising under or in

connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or Subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

M.    <u>No Successor or Other Derivative Liability</u>.    By consummating the Sale Transaction pursuant to the Asset Purchase Agreement, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor.  The Purchaser is not holding itself out as a continuation of any Debtor.  The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors or any of the Debtors' estates.  Neither the Purchaser nor any of its affiliates or their respective successors, assigns, members, partners, principals, or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement.  The sale and transfer of the Transferred Assets to the Purchaser, including the assumption by the Debtors and assignment, transfer, and/or sale to the Purchaser of any of the Contracts, will not subject the Purchaser to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities.

N.    <u>Good Faith</u>.  The Debtors, the Purchaser and their respective counsel and other advisors have negotiated and entered into the Asset Purchase Agreement and each of the

transactions contemplated thereby in good faith, without collusion and from arms'-length bargaining positions.  The Purchaser is a good-faith purchaser, and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.  The Debtors were free to deal with any other party interested in acquiring all or some of the Transferred Assets.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Sale Transaction, the Asset Purchase Agreement, or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) of the Bankruptcy Code.  The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the Purchaser's participation in and bidding at the Auction were not controlled by any agreement among bidders.  All payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors under the Asset Purchase Agreement in connection with the Sale Transaction have been disclosed and are appropriate.  The Asset Purchase Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors under laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Debtors nor the Purchaser have entered into the Asset Purchase Agreement or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

> O.    <u>Insider Status</u>.  The Purchaser is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of the Debtors.

P.    <u>Assumption and Assignment of Contracts</u>.  The assumption and assignment of the Contracts are an integral part of the Sale Transaction, are in the best interests of the Debtors and their estates and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Contracts (a) are necessary to sell the Transferred Assets to the Purchaser as contemplated by the Asset Purchase Agreement, (b) allow the Debtors to sell the Transferred Assets to the Purchaser as a going concern, (c) limit the losses suffered by the Counterparties to the Contracts, and (d) maximize the recoveries of other creditors of the Debtors by eliminating claims against the Debtors' estates that would arise from the Debtors' rejection of the Contracts.  Any Counterparty to any Contract that has not actually filed with the Court and served on the Objection Notice Parties (as defined in the Bidding Procedures) an objection to the Debtors' assumption and assignment of such Contract, or to the applicable Cure Costs, as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Contract, and to the applicable Cure Costs.

Q.    <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Contracts.  The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Contracts on or before the Closing Date.  The Purchaser has demonstrated adequate assurance of future performance of and under the Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Contracts shall be assigned and transferred

to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Contracts or other restrictions prohibiting their assignment or transfer.

R.    <u>Modifications to Contracts</u>.    Pursuant to section 5.3 of the Asset Purchase Agreement, the Purchaser may, in consultation with the Sellers and upon provision of written notice to the Sellers, modify the list of the Contracts after the date of this Order until the earlier of (a) 30 days following the Closing Date, (b) the entry of an order confirming a chapter 11 plan of reorganization or liquidation of the Debtors, or (c) such time that the Chapter 11 Cases are closed or dismissed.  Such modification rights include, but are not limited to, the right of the Purchaser to designate a Contract for assumption by the Debtors and assignment to the Purchaser, as well as for exclusion from the Sale as an Excluded Contract, Excluded Asset, and/or Excluded Liability. The Purchaser would not have agreed to the Sale Transaction without such modification rights. The notice and opportunity to object provided to Counterparties to such Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order, fairly and reasonably protect any rights that such Counterparties and other parties in interest may have with respect to such Contracts.

S.    <u>Property of the Estates</u>.  The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

T.    <u>Validity of the Sale Transaction</u>.  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction.  As of the Closing, the sale and assignment of the Transferred Assets and the Contracts to the Purchaser will be a legal, valid, and effective transfer of the Transferred Assets

and the Contracts, and will vest the Purchaser with all right, title, and interest of the Debtors in and to the Transferred Assets and the Contracts free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement).  The Debtors have full corporate or other applicable authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors.  Upon entry of this Order, other than any consents identified in the Asset Purchase Agreement or this Order, no consent or approval from any other person, entity, or legal authority is required to consummate the Sale Transaction. Pursuant to section 2.2(e) of the Asset Purchase Agreement, none of the Transferred Assets as of the Closing will incorporate, use or be derived from any Qorvo Trade Secret Information (as defined in the Asset Purchase Agreement).   Notwithstanding anything to the contrary in the Bidding Procedures Order, certain "machinery and equipment" (as described in the Bidding Procedures Order), as disclosed in Exhibit [__] to the Perry Declaration, included as part of the Transferred Assets do not include Qorvo Trade Secret Information (the "Clean Machinery & Equipment"), and as such, the Clean Machinery & Equipment will not be subjected to a "factory reset" process prior to the transfer thereof to Purchaser.   Transferred Assets that consist of "machinery and equipment" other than the Clean Machinery & Equipment will be subjected to a "factory reset" process as described in the Bidding Procedures Order and paragraph 43 hereof, except as otherwise agreed by Qorvo, Inc. ("Qorvo").  The Sale Transaction and transmission of Transferred Assets from Debtors to Purchaser does not violate that certain Permanent Injunction (the "Injunction") issued by the United States District Court for the District of Delaware on October 15, 2024, in the matter of *Qorvo, Inc. v. Akoustis Technologies and Akoustis, Inc.* (Case

No. 1:21-cv-01417) (the "<u>District Court Litigation</u>"), or any modification thereto and such Injunction, therefore, shall not attach to any of the Transferred Assets at Closing.

U.      <u>No *Sub Rosa* Plan</u>.  Neither the Sale Transaction nor the Asset Purchase Agreement impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  Neither the Sale Transaction nor the Asset Purchase Agreement constitutes a *sub rosa* or *de facto* plan of reorganization or liquidation, as neither proposes to (a) impair or restructure any existing debt of, or equity interests in, the Debtors; (b) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (c) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (d) classify claims or equity interests or extend debt maturities.

V.      <u>No Stay of Order</u>.  Time is of the essence to implement the Asset Purchase Agreement and consummate the Sale Transaction.  The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Transferred Assets and to maximize the value to the Debtors, their estates, their creditors, and all other parties in interest.  The Debtors have demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062, or any applicable provisions of the Local Rules, and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

W.      <u>Time is of the Essence</u>.  The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Debtors' assets, as there is substantial risk of deterioration of the value of the Transferred Assets if the Transactions are not consummated

quickly.  Accordingly, there is good cause to waive the stay contemplated by Bankruptcy Rules 4001, 6004, 6006, and 7062.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Sale Motion Granted</u>.  The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) are GRANTED and approved as set forth herein.

2.      <u>Objections Overruled</u>.  Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.  All persons and entities given notice of the Sale Motion that failed timely to object thereto or that withdrew their objections thereto are deemed to consent to the relief granted herein for all purposes, including, without limitation, section 363(f)(2) of the Bankruptcy Code.

3.      <u>Sale Transaction Approved</u>.  The Asset Purchase Agreement and all transactions contemplated thereby are APPROVED.

4.      <u>Prior Findings of Fact and Conclusions of Law</u>.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing and the findings of fact recited above are incorporated herein by reference.

5.      <u>Debtors' Performance Authorized</u>.  The Debtors are hereby authorized to enter into and perform their obligations under the Asset Purchase Agreement, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the Sale Transaction, or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests,

and any other instruments of transfer, without further order of the Court.  The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Transferred Assets and the Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Asset Purchase Agreement and consummate the Sale Transaction, without further order of the Court.

6.      Debtors are hereby authorized, but not directed, to enter into Separation Agreements and remit Severance Payments to Severance Eligible Employees in accordance with the terms of the Separation Agreements, in each case, pursuant to Section 6.9 of the Asset Purchase Agreement.

7.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Transferred Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the Sale Transaction, or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

8.      <u>Valid Transfer</u>.  Effective as of the Closing Date, the sale and assignment of the Transferred Assets and the Contracts by the Debtors to the Purchaser shall constitute a legal, valid, and effective transfer of the Transferred Assets and the Contracts, notwithstanding any requirement for approval or consent by any person, and will vest the Purchaser with all right, title,

and interest of the Debtors in and to the Transferred Assets and the Contracts, free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

9.      <u>Free and Clear Sale</u>.  Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer to the Purchaser the Transferred Assets.  The sale and transfer of the Transferred Assets to the Purchaser shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Transferred Assets free and clear of any and all Interests of any person or entity (other than any Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), with all such Interests to attach solely to the net proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force, and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims, or defenses of the Debtors or their estates.  Following the Closing, no holder of any Interest on any of the Transferred Assets shall interfere with the Purchaser's use or enjoyment of any of the Transferred Assets based on or related to such Interest or any actions that the Debtors have taken or may take in their Chapter 11 Cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

10.      The provisions of this Order authorizing the sale and transfer of the Transferred Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, or implement the provisions of this Order.  For the

avoidance of doubt, on or after the Closing Date, the Debtors and/or the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents, or other instruments in any jurisdiction to record the release, discharge, and termination of Interests on the Transferred Assets pursuant to the terms of this Order.

11.    <u>Direction to Creditors</u>.  This Order shall be (a) effective as a determination that, as of the Closing Date, all Interests on the Transferred Assets (except as otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) shall be unconditionally released, discharged, and terminated as to the Purchaser and the Transferred Assets; and (b) binding upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on any of the Transferred Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Transferred Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens*, or other document, instrument, notice, or agreement evidencing any Interest on the Transferred Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases, or instruments of satisfaction that the person or entity has with respect to the Transferred Assets, the Debtors and/or the Purchaser are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction, or other documents with respect to the Transferred Assets on behalf of the applicable person or entity; and (y) file, register, or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Transferred Assets.  This Order is deemed to be in recordable form sufficient to be placed in the

filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

12.    <u>Direction to Recording Officers</u>.  This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials, and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments regarding the Transferred Assets or who may be required to report or insure any title or state of title in or to the Transferred Assets, (collectively, the "<u>Recording Officers</u>").  All Recording Officers are hereby authorized and directed to (a) accept any and all documents or instruments necessary and appropriate to consummate the Sale Transaction or to record and reflect that the Purchaser is the owner of the Transferred Assets free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) and (b) strike all recorded Interests on the Transferred Assets from their records.

13.    <u>Direction to Surrender the Transferred Assets</u>.  All persons or entities in possession or control of any of the Transferred Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Transferred Assets to the Purchaser on the Closing Date.

14.    <u>No Successor Liability</u>.  The Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals, and shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of

law or equity; (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, environmental (including, without limitation, any Environmental Law), products liability or other law, doctrine, rule, or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule, or regulation.

15.     The Purchaser shall not assume, nor be deemed to have assumed or in any way be responsible for any liability or obligation, of any of the Debtors or any of their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability, or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors or similar liability, except as otherwise expressly provided in the Asset Purchase Agreement, and the Sale Motion, Sale Notice and Notice of Auction Results contain sufficient notice of such limitation in accordance with applicable law.  Except for the Assumed Liabilities, the transfer of the Transferred Assets and the Contracts to the Purchaser under the Asset Purchase Agreement will not result in (a) the Purchaser, its affiliates, or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals, or shareholders (or the equivalent thereof) or any of the Transferred Assets having any liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors (including, without limitation, Excluded Liabilities); (b) the Purchaser, its affiliates, or any of their respective

predecessors, successors, assigns, members, partners, officers, directors, principals, or shareholders (or the equivalent thereof) or any of the Transferred Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests or Excluded Liabilities; or (c) the Purchaser, its affiliates, or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals, or shareholders (or the equivalent thereof) or any of the Transferred Assets having any liability or responsibility to any of the Debtors except as is expressly set forth in the Asset Purchase Agreement.

16.     Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, its assets (including the Transferred Assets) or its successors or assigns, with respect to any (a) Interest on the Transferred Assets or (b) successor, transferee, vicarious, or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Interest; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; or (v) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with the Transferred Assets; *provided*, that for the avoidance of doubt, nothing in this Order shall impair

Qorvo's right to assert any claims that arise solely from Purchaser's post-Closing use of the Transferred Assets.

17.    <u>Assumption and Assignment of Contracts</u>.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtors' assumption and assignment of the Contracts to the Purchaser free and clear of all Interests pursuant to the terms of the Asset Purchase Agreement, as modified by the terms of any amendments reached by the Purchaser and the respective Counterparty, is hereby approved, and the requirements of sections 365(b)(1), 365(f)(2) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Debtors' assumption and assignment of the Contracts to the Purchaser, each applicable Counterparty shall be forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors, the Purchaser, or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated, senior or subordinate), counterclaim, defense, setoff, or any other matter arising under or out of, in connection with, or in any way related to, the Contracts existing as of the Closing Date or arising by reason of the Closing.  Upon the Debtors' assumption and assignment of the Contracts to the Purchaser, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and to the Contracts and the Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  The Debtors' assumption and assignment of the Contracts to the Purchaser shall not constitute a default under or a termination of any Contract.

18.    <u>The Debtors Shall Not Retain Liability for the Contracts and Assumed Liabilities</u>. Effective as of the Closing Date, (a) the assumption of the Contracts and the Assumed Liabilities by the Purchaser constitutes a legal, valid, effective, complete, and absolute sale, conveyance, and transfer from the Debtors to the Purchaser of any and all Liabilities relating to, in connection with, or arising under the Contracts and Assumed Liabilities; and (b) the Debtors shall have no liability to Purchaser or any other Person for any Liabilities with respect to the Contracts and Assumed Liabilities.  Further, it is the Parties' express intention that the Sale Transaction be, and be treated for all purposes, as an absolute sale, conveyance, and transfer of all Liabilities relating to, in connection with, or arising under the Contracts and Assumed Liabilities.

19.    <u>Cure Obligations</u>.  Any defaults or other obligations under the Contracts shall be deemed cured by the satisfaction of the cure amounts, if any, associated with the Contracts, including as listed on the Assumption and Assignment Notices, or as otherwise agreed with any such Contract Counterparty or as determined by the Court, as applicable (the "<u>Cure Costs</u>"), and such Cure Costs shall constitute the only liabilities the Purchaser must satisfy to cure any defaults or satisfy any other existing obligations under the Contracts.

20.    <u>Cure Objections</u>.  Except as provided herein, all objections to the Debtors' calculation of Cure Costs with respect to any of the Contracts (each such objection, a "<u>Cure Objection</u>") have been overruled, withdrawn, waived, settled, or otherwise resolved.  Any Cure Objections as to applicable Cure Costs that have not been resolved by the parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a particular Contract shall not prevent or delay the assumption or assignment of any other Contract or the closing of the Sale Transaction.

21.    <u>Adequate Assurance</u>.  The Purchaser has provided adequate assurance of future performance under the Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B) and 365(365(b)(3) (to the extent applicable) of the Bankruptcy Code.  Any Adequate Assurance Objections that have not been withdrawn, waived, or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the Debtors' assumption and assignment of the Contracts to the Purchaser have been satisfied.

22.    <u>Anti-Assignment Provisions Unenforceable</u>.  No section or provision of any Contract that purports to (a) prohibit, restrict, or condition the assignment of a Contract, including, but not limited to, the conditioning of such assignment on the consent of any Counterparty to such Contract; (b) authorize the termination, cancellation, or modification of a Contract based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges, or other financial accommodations in favor of the Counterparty to a Contract, or modification of any term or condition upon the assignment of a Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) of the Bankruptcy Code and/or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

23.    <u>No Fees for Assumption and Assignment</u>.  There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Purchaser, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Contracts.

24.     <u>Direction to Contract Counterparties</u>.  All Counterparties to Contracts assigned to the Purchaser in accordance with the terms of this Order and the Asset Purchase Agreement shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Contracts to the Purchaser.

25.     <u>Modification of Contracts List</u>.  The rights of the Purchaser to modify the list of Contracts in accordance with Section 5.3 of the Asset Purchase Agreement after the date of this Order are approved.  Pursuant to section 5.3 of the Asset Purchase Agreement, the Purchaser may, in consultation with the Sellers and upon provision of written notice to the Sellers, modify the list of the Contracts after the date of this Order until the earlier of (a) 30 days following the Closing Date, (b) the entry of an order confirming a chapter 11 plan of reorganization or liquidation of the Debtors, or (c) such time that the Chapter 11 Cases are closed or dismissed.  If the Purchaser identifies a Contract it does not seek to be assumed and assigned, then such Contract shall, upon written notice to the Sellers and any applicable Counterparty, be automatically deemed removed from the list of Designated Contracts pursuant to section 5.3 of the Asset Purchase Agreement and deemed an Excluded Contract, Excluded Asset, and/or Excluded Liability.  If the Purchaser identifies an executory contract or unexpired lease previously excluded from the list of Designated Contracts that the Purchaser seeks to be assumed and assigned, then (a) such contract or lease shall, upon written notice to the Sellers, and provided that such contract or lease has not been rejected pursuant to an Order of the Bankruptcy Court, be automatically deemed a Contract and added to the list of Designated Contracts, and (b) to the extent not already served with an Assumption and

Assignment Notice, the Debtors shall file and serve a notice (the "<u>Previously Omitted Contract Notice</u>") on the Counterparties to such Contract notifying such Counterparties of the Debtors' intention to assign and the Purchaser's intention to assume such Contract, including the proposed Cure Costs (if any).  The Counterparties to such Contract shall have fourteen (14) calendar days from the date of such Previously Omitted Contract Notice to file and serve on the Debtors and the Purchaser an objection to the assumption of its Contract.  If the Counterparties, Debtors, and the Purchaser are unable to reach a consensual resolution with respect to a timely served objection to a Previously Omitted Contract Notice, the Debtors will seek, at Purchaser's expense, an expedited hearing before this Court to seek approval of the assumption and assignment of such Contract.  If no objection is timely served on the Debtors and the Purchaser, then such Contract shall be deemed assumed by the applicable Debtor and assigned to the Purchaser, or transferred by the applicable Debtor to the Purchaser, as applicable, pursuant to this Order.

26.    <u>Licenses and Permits</u>.  To the extent provided in the Asset Purchase Agreement and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Transferred Assets and the Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent any license or permit necessary for the operation of the Transferred Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Purchaser's benefit until a new license or permit is obtained.

27.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Transferred Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction.

28.     <u>Good-Faith Purchaser</u>.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity or enforceability of any sale, transfer, or assignment under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless duly stayed pending appeal prior to the Closing Date) and, notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment under the Asset Purchase Agreement, shall be governed in all respects by the original provisions of this Order or the Asset Purchase Agreement, as applicable.

29.     <u>Claims Against Directors and Officers</u>.  Notwithstanding anything contained herein or in the Asset Purchase Agreement to the contrary, nothing contained herein or in the Asset Purchase Agreement shall constitute a release, waiver, transfer or sale of any rights, remedies, claims, or causes of action held by the Debtors or their estates against any current or former officers, directors, shareholders, employees, affiliates, agents or representatives of the Debtors, and all such rights, remedies, claims and causes of action are hereby expressly preserved.

30.     <u>No Avoidance</u>.  Neither the Sale Transaction nor the Asset Purchase Agreement is subject to avoidance, and no party is entitled to any damages or other recovery in connection therewith under section 363(n) of the Bankruptcy Code.

31.     <u>Bulk Sales</u>.  No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

32.     <u>Amendments</u>.  The Asset Purchase Agreement, the Related Documents and any other agreements, documents or instruments related thereto may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court; *provided*, *that*, any such amendment, supplement, or modification shall not have a material adverse effect on the Debtors' estates or otherwise materially amend or modify, or be deemed to materially amend or modify, this Order; *provided further* that any such amendment, supplement or modification shall be provided to the Official Committee of Unsecured Creditors, the United States Trustee and Qorvo as soon as commercially reasonable in advance of the effectiveness of such amendment, supplement or modification.

33.     <u>Binding Order</u>.  This Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors, and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all Counterparties to any Contracts, and all Recording Officers.  Neither the Sale Transaction nor the Asset Purchase Agreement shall be subject to rejection or avoidance under any circumstances.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and its respective successors and assigns.

34.     <u>Allocation of Consideration</u>.  Except as provided in the Asset Purchase Agreement, all rights of the respective Debtors' estates with respect to the allocation of consideration received

from the Purchaser in connection with the Sale Transaction (including, without limitation, the value of the assumption of the Assumed Liabilities) are expressly reserved for later determination by the Court and, to the extent consideration is received by any Debtor that is determined to be allocable to another Debtor, the recipient Debtor shall be liable to such other Debtor for a claim with the status of an expense of administration in the case of the recipient Debtor under section 503(b) of the Bankruptcy Code.

35.    <u>Failure to Specify Provisions; Conflicts</u>.    The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Purchaser that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.    Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

36.    <u>Further Assurances</u>.    From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, confirm, record, or otherwise transfer to the Purchaser its right, title, and interest in and to the Transferred Assets and the assigned Contracts.

37.    <u>Automatic Stay</u>.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Asset Purchase Agreement and to take any and

all actions permitted or required under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

38.     <u>No Stay of Order</u>.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.    The provisions of this Order shall be self-executing. Time is of the essence in implementing the Asset Purchase Agreements and closing the Sale Transaction.    Any party objecting to this Order or any of the relief granted herein must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing of the Sale Transaction or risk its appeal being foreclosed as moot.

39.     <u>Governing Terms</u>.    To the extent this Order is inconsistent with any prior order or pleading in these Chapter 11 Cases (other than the Letter Ruling), the terms of this Order shall govern, and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale Transaction.    To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

40.     <u>No Modification by Subsequent Orders or Plan Provisions</u>.    Nothing contained in any chapter 11 plan confirmed in these Chapter 11 Cases, any order confirming any such plan, or in any other order entered in these Chapter 11 Cases (including, without limitation, any order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall modify, alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement, the Related Documents any other agreements, documents or other instruments related thereto, or this Order.

41.     <u>Reservation of Rights</u>.  The Injunction continues to apply with respect to the Debtors and all persons and entities encompassed by the Injunction and Qorvo reserves all rights with respect to Qorvo Trade Secret Information and Disputed Data (as defined in the Letter Ruling).

42.     <u>Scope of Transferred Assets</u>.  Notwithstanding anything to the contrary herein or in the Asset Purchase Agreement or the Related Documents: (i) the Transferred Assets shall not include any Qorvo Trade Secret Information or Disputed Data (as defined in the Letter Ruling), and to the extent the Purchaser receives or discovers such Qorvo Trade Secret Information or Disputed Data in its possession, it shall promptly inform Qorvo of such receipt or discovery, and turn such data or information over to Qorvo or otherwise destroy such information; and (ii) pursuant to Section 7.7 of the Asset Purchase Agreement, the Transferred Assets shall not include any Excluded Trimmed Inventory (as defined in the asset purchase agreement), including finished products (including prototypes) and work in progress (including wafers, substrates, resonators, trimmed or un-trimmed filters or resonators, packaged or unpackaged filters or resonators, in each case, manufactured by Sellers), and all of the foregoing inventory shall be destroyed within 30 days of entry of this Order, unless otherwise agreed to by Qorvo.

43.     <u>Process and Timing for Qorvo Review of Certain Transferred Assets</u>.  Debtors shall deliver to Qorvo, by no later than May 1, 2025, evidence reasonably acceptable to Qorvo that all data and information that Debtors intend to deliver to Purchaser as set forth in Exhibit [__] of the Perry Declaration complies with the Letter Order.  For servers or virtual machines listed on Exhibit [__] of the Perry Declaration that have been reset and that Debtors intend to deliver to Purchaser, as described in the Perry Declaration, this evidence will include documentation reasonably acceptable to Qorvo of how the reset has been carried out.  For cloud resources listed on Exhibit

[___] of the Perry Declaration that Debtors intend to deliver to Purchaser that contain files that were reviewed in the Cleanse Process, including GitHub repositories, Omnify, and I-Track, Debtors will provide evidence reasonably acceptable to Qorvo of the files remaining on such cloud resources after files flagged for remediation in the Cleanse Process have been removed.  For the two "Ark Servers" and RFMi NAS that are listed on Exhibit [___] of the Perry Declaration that Debtors intend to deliver to Purchaser, this evidence will include a list of files stored on the servers, together with file names, file paths and file hashes.  Qorvo shall have until May 13, 2025 to review the foregoing and confirm Debtors' compliance with the Letter Ruling and Injunction.

44.     <u>Process and Timing for Qorvo Review of Machinery and Equipment</u>.    All machinery and equipment that Debtors intend to deliver to Purchaser that does not constitute Clean Machinery and Equipment, unless otherwise agreed to by Qorvo is set forth on Exhibit [___] of the Perry Declaration and shall be subjected to a "factory reset" process to be completed by no later than May 1, 2025 for machinery and equipment located in the United States, and May 7, 2025 for machinery and equipment located in Asia, which reset shall, as disclosed in Exhibit [___] to the Perry Declaration, include the deletion of data related to the Debtors' products and/or processes stored in such machinery and equipment, where such data was not provided by the manufacturer or supplier thereof, and reverted to factory settings.  For such systems, Debtors will provide Qorvo with documentation reasonably acceptable to Qorvo evidencing such reset by May 2, 2025, with respect to machinery and equipment located in the United States, and May 8, 2025, with respect to machinery and equipment located in Asia.  With respect to certain machinery or equipment listed on Exhibit [___] on the Perry Declaration that has not undergone a "factory reset" by agreement with Qorvo, but where files were removed from the machinery or equipment for remediation, as disclosed in Exhibit [___] to the Perry Declaration, Debtors will provide Qorvo with

a list of the remaining files on such machinery or equipment, together with file names, file paths and file hashes, to the extent available, or if providing a list of files is impracticable, evidence reasonably acceptable to Qorvo of how the remediation was conducted.  Qorvo shall have until May 13, 2025 to review the foregoing and confirm Debtors' compliance with the Letter Ruling and Injunction.

45.    _Destruction of Qorvo Trade Secret Information and Disputed Data_. All Qorvo Trade Secret Information and Disputed Data in Debtors' possession, including, without limitation, all data and information that is (i) not included in the sale to Purchaser or (ii) not part of the GDSI assets for sale, shall be (1) sequestered and held in escrow by a data repository company acceptable to both Debtors and Qorvo, and (2) ultimately destroyed at the earliest of the conclusion of this bankruptcy case or pursuant to further Court order.  Upon destruction of all Qorvo Trade Secret Information, Disputed Data or other information, data, or products consistent and as contemplated by this Order, the Debtors shall certify in writing that such destruction has been completed to Qorvo.

46.    _Qorvo Claims_.  All claims that Qorvo may have against the Debtors in these Chapter 11 Cases arising from the Petition Date until the Closing and related to the Injunction shall be unsecured claims.

47.    _Dismissal of Appeals_.  Contingent upon the consummation of the Sale Transaction as provided for herein and this Order becoming a Final Order, the Debtors shall dismiss or otherwise withdraw all pending appeals with respect to Qorvo, the District Court Litigation and the Injunction.[4]

---

[4] NTD: Committee and UST to review and weigh in on this request.

48.    <u>Qorvo Expense Reimbursement</u>.  Contingent upon the consummation of the Sale Transaction as provided for herein and this Order becoming a Final Order, Debtors shall remit to Qorvo out of the first sale proceeds, a cash payment in the amount of $175,000 as an expense reimbursement to be applied against Qorvo's expenses incurred in connection with Qorvo's review of the GDSI assets being sold and Qorvo's review described in paragraphs 43 and 44 of this Order.

49.    <u>Letter Ruling</u>.  Notwithstanding anything to the contrary herein, this Order shall not amend, modify or undermine the Letter Ruling, which continues in full force and effect.

50.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Order, the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, and the status, nature, and extent of the Transferred Assets and the Contracts.

51.    <u>Authorization</u>.  The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.