**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ATECH (PARENT) RESOLUTION CORP, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12796 (LSS)<br><br>(Jointly Administered)<br><br>Obj. Deadline: Dec. 9, 2025 at 4:00 p.m. (ET)<br>Hearing Date: Dec. 16, 2025 at 2:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER SECTION 502(c) OF THE BANKRUPTCY CODE ESTIMATING CERTAIN CLAIMS FOR PURPOSES OF AN INITIAL DISTRIBUTION**

The above-captioned debtors and debtors in possession ("Debtors") in the above-captioned cases ("Chapter 11 Cases") hereby submit this motion (the "Motion") pursuant to sections 502(c) and 105(a) of title 11 of the United States Code (as amended, "Bankruptcy Code"), to estimate proofs of claim numbers 97–104 (the "Indemnification Claims") filed by Arthur Geiss and Jerry Neal (the "Indemnification Parties") for the purposes of facilitating the Initial Distribution defined in and contemplated by the Debtors' proposed *Joint Chapter 11 Plan of ATech (Parent) Resolution Corp and its Debtor Affiliates* [D.I. 825] (the "Plan"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ATech (Parent) Resolution Corp. (9046), ATech Resolution Corp. (5617), GD Chips Resolution Corp. (f/k/a Grinding and Dicing Services, Inc.) (7929), and RF Chips Resolution Corp. (1138). The Debtors' mailing address is c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, Attn: Mark D. Podgainy.

{1472.002-W0084078.11}

## PRELIMINARY STATEMENT[2]

1. The Plan reflects extensive efforts by the Debtors, the Committee, and key stakeholders to reach an arms-length agreement to resolve numerous disputes, maximize recoveries for creditors, and pay creditors in a timely manner.

2. In connection with the Initial Distribution contemplated by the Plan, the Debtors and Plan Administrator must have clarity about the ultimate estimated amounts of certain contingent or unliquidated claims, such as the Indemnification Claims. Therefore, the Debtors seek to estimate the Indemnification Claims for the limited purpose of facilitating the Initial Distribution under the Plan.

3. The Indemnification Claims are based on the possibility that potential litigation by the Committee or the Plan Administrator against the Indemnification Parties may give rise to claims for advancement and/or reimbursement. Since no claims or causes of action have been filed against the Indemnification Parties, in the interest of moving these cases forward, the Debtors seek to estimate the Indemnification Claims at zero for the limited purpose of the Initial Distribution while reserving any Indemnification Parties' rights with respect to such claims in the event such claims become non-contingent and liquidated and any rights or objections the Debtors or the Plan Administrator may have in respect of the Indemnification Claims on any and all grounds. This structure will balance the rights of the various parties by permitting current holders of Allowed Claims to receive prompt payment of the Initial Distribution as contemplated by the Plan while preserving the rights of the Indemnification Parties.

---

[2] Terms utilized but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Motion or in the Plan.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors consent, pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 502(c) of the Bankruptcy Code.

**BACKGROUND**

*A. General Background*

5. On December 16, 2024 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On December 30, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") [D.I. 93]. The U.S. Trustee has since filed two amendments to the appointment of the Committee [D.I. 96 & 150].

7. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Mark*

*D. Podgainy in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] (the "First Day Declaration"), which is incorporated herein by reference.

8. On September 30, 2025, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 782] (the "Solicitation Motion"), *Joint Chapter 11 Plan of ATech (Parent) Resolution Corp and its Debtor Affiliates* [D.I. 780], and the *Disclosure Statement for the Joint Chapter 11 Plan of ATech (Parent) Resolution Corp. and its Debtor Affiliates* [D.I. 781].

9. On October 29, 2025, the Court entered the *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 819].

10. On October 30, 2025, the Debtors filed the solicitation versions of the Plan and the *Disclosure Statement for the Joint Chapter 11 Plan of ATech (Parent) Resolution Corp. and its Debtor Affiliates* [D.I. 823] (the "Disclosure Statement").

11. Under the Plan, a plan administrator ("Plan Administrator") will be appointed and tasked with, among other responsibilities, distribution of the Debtors' assets to the holders of Allowed Claims.[3]

---

[3] "Allowed Claim(s)" is defined in the Plan.  Plan § 1(A)(5).

12.     The Plan is the result of extensive negotiation between the Debtors, the Committee, and the Debtors' largest unsecured creditor—Qorvo Inc. One of the key components of the Plan is timely distribution to holders of Allowed Claims. In furtherance of this, the Plan Administrator must make an initial distribution (the "Initial Distribution") to the holders of Allowed Claims within 30 days of the Effective Date of the Plan. Payment of the Initial Distribution will be no more than fifty percent of the total cash on hand, leaving at least fifty percent of the cash on hand available for future distribution including, if applicable, to the Indemnification Parties and any other holders of a claim that may become entitled to a distribution.

13.     A hearing to consider final approval of the Disclosure Statement and confirmation of the Plan is scheduled for December 16, 2025.

### B. Claims Reconciliation Process

14.     On March 7, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Establishing Bar Dates for Filing Proofs of Prepetition Claims, Including Section 503(b)(9) Claims; and (II) Approving Notice Thereof* [D.I. 345] (the "Bar Date Motion"). On May 12, 2025, the Court entered an order granting the Bar Date Motion [D.I. 555] (the "Bar Date Order"). Pursuant to the Bar Date Order, the Court established 5:00 p.m. (prevailing Eastern Time) on the date that is thirty-five (35) days after service of the Bar Date Notice (as defined in the Bar Date Motion) (the "General Bar Date") as the deadline for all persons and entities (excluding governmental units as defined in section 101(27) of the Bankruptcy Code) holding a claim against the Debtors, subject to certain exceptions, to file a Proof of Claim in the Chapter 11 Cases. The Bar Date Notice was served on May 13, 2025, therefore the General Bar Date was June 17, 2025.

15.     On February 3 and February 4, 2025, the Debtors filed their *Statements of Financial Affairs* [D.I. 250–253] and *Schedules of Assets and Liabilities* [D.I. 254–257, 259, 260]. On

October 16, 2025, the Debtors amended their *Schedules of Assets and Liabilities* [D.I. 791-794] (as amended or modified and together as, the "Schedules and Statements").

16. Pursuant to the Bar Date Order, the deadline to file proofs of claim based on the Debtors' amendment to the Schedules and Statements was November 17, 2025.

17. On November 12, 2025, the Indemnification Parties filed the Indemnification Claims asserting unliquidated damages for indemnification and expense advancement or reimbursement claims related to threatened litigation that has not been brought.

18. The Debtors maintain directors and officers liability insurance (the "D&O Insurance Policies") in the amount of $10,000,000 side A coverage with an additional $25,000,000 available under the Debtors' side A-B-C coverage.

## RELIEF REQUESTED

19. By this Motion, the Debtors respectfully request that this Court enter an order, substantially in the form attached as **Exhibit A** hereto, pursuant to sections 502(c) and 105(a) of the Bankruptcy Code estimating the Indemnification Claims for the limited purpose of facilitating the Initial Distribution under the Plan.

20. This Motion is brought solely for the purpose of permitting the Initial Distribution while preserving the Indemnification Parties' and Plan Administrator's other rights with respect to the Indemnification Claims. Nothing set forth herein shall be deemed or construed as an admission by the Debtors or the Plan Administrator, as applicable, as to any liability for any Indemnification Claims. Further, nothing contained herein is intended to limit the ability of any holder of an Indemnification Claim to obtain a determination of the amount of the Indemnification Claim or assert a right for recovery on account of such Indemnification Claim and receive its finally determined amount in accordance with the Plan.

**BASIS FOR RELIEF**

21. One of the "fundamental bankruptcy polic[ies is] equitable distribution to all creditors that should not be undermined by an individual creditor's claim." *Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 879 (3d Cir. 2014). Another is that "reorganization 'must be accomplished quickly and efficiently.'" *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (quoting *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135-37 (3d Cir. 1982)).

22. In furtherance of these overarching goals, section 502(c) of the Bankruptcy Code provides in relevant part that:

> (c) There shall be estimated for purpose of allowance under this section—
>
> > (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]

11 U.S.C. § 502(c). Estimation is "designed for two purposes: 1) to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions, and 2) to promote a fair distribution to creditors through a realistic assessment of uncertain claims." *In re Enron Corp.*, No. 01-16034 (AJG), 2006 Bankr. LEXIS 4294, at *10 (Bankr. S.D.N.Y. Jan. 17, 2006). In other words, "estimation provides a means for a bankruptcy court to achieve [] distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia Communs. Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007).

23. Estimation accomplishes this by "streamlin[ing] the claims process in cases where the fixing or liquidation of contingent or unliquidated claims may take an excessive amount of time." *In re FTX Trading*, No. 22-11068 (JTD), 2024 Bankr. LEXIS 1512, at *17 (Bankr. D. Del. June 26, 2024). This allows debtors to get "recoveries into the pockets of creditors without

delaying the whole process as a consequence of a limited number of very complex claims." *In re Adelphia Bus. Sols., Inc.*, 341 B.R. at 423.

24. Here, estimation of the Indemnification Claims is necessary to permit the Initial Distribution while balancing the Indemnification Parties' rights if the Indemnification Claims become liquidated and Allowed Claims. The Indemnification Claims seek unspecified indemnification and expense advancement or reimbursement related to potential litigation that has not been brought and may never be brought. Because the litigation underlying the Indemnification Claims is entirely speculative, the Indemnification Claims are both contingent and unliquidated. Further, awaiting liquidation through litigation, if such claims are brought against the Identification Parties will take years to conclude—if it occurs at all— and will unduly delay distribution to all holders of Allowed Claims. Estimating the Indemnification Claims is well within the scope of sections 502(c) and 105(a) of the Bankruptcy Code.

### A. Estimation of the Indemnification Claims is Appropriate for Purposes of the Initial Distribution Under the Plan.

25. "Estimation by the Court is mandatory, provided that the movant establishes that fixing or liquidation of the claim would unduly delay the administration of the case." *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007).

26. Estimation is appropriate to permit "distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia Communs. Corp.*, 368 B.R. at 278; *see also FTX Trading*, 2024 Bankr. LEXIS 1512, at *17 (Estimation is appropriate for a situation where "the fixing or liquidation of contingent or unliquidated claims may take an excessive amount of time" and hold up the bankruptcy case). A fundamental purpose of bankruptcy is to provide for the "equitable distribution to all creditors" "quickly and efficiently." *See In re Emoral, Inc.*, 740 F.3d at 879  (one of the "fundamental

bankruptcy polic[ies is] equitable distribution to all creditors that should not be undermined by an individual creditor's claim."); *see also In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("the fundamental policy of Chapter 11 that a reorganization 'must be accomplished quickly and efficiently.'"). "Lengthy bankruptcy proceedings cause delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use the assets until they receive them." *In re Lionel L.L.C.*, No. 04-17324, 2007 Bankr. LEXIS 2652, at *8 (Bankr. S.D.N.Y. Aug. 3, 2007).

27. Estimation furthers these goals by causing cases "to move forward and to get recoveries into the pockets of creditors without delaying the whole process as a consequence of a limited number of very complex claims." *In re Adelphia Bus. Sols., Inc.*, 341 B.R. at 423; *see also In re Teigen*, 228 B.R. 720, 723 (Bankr. D.S.D. 1998) (estimating claims lest "[o]ther creditors' payments [] be delayed unnecessarily").

28. If liquidation of a limited pool of claims would create a delay of multiple years, courts will estimate the claims rather than force the bankruptcy to languish. *See, e.g., In re AMR Corp.*, No. 11-15463 (SHL), 2021 Bankr. LEXIS 1867, at *14 (Bankr. S.D.N.Y. July 14, 2021) (holding estimation required to "put an end to the more than three years of delay"); *In re N. Am. Health Care, Inc.*, 544 B.R. 684, 688 (Bankr. C.D. Cal. 2016) (holding "it is clear that the Court must estimate" claims whose liquidation "is likely to take several years"); *In re Perry*, 425 B.R. 323, 336 (Bankr. S.D. Tex. 2010) (estimating claims "so that there would not be the inevitable substantial delay in the main case while the parties fully litigated, for months if not years, the amount of the claims to a final judgment"); *In re Lionel L.L.C.*, 2007 Bankr. LEXIS 2652, at *12 (holding estimation necessary to avoid "a full-blown jury trial [] which is not even calendared"); *In re Teigen*, 228 B.R. at 723 (holding that a delay of "several years" to liquidate the claims for

two stakeholders was "too long. Other creditors' payments would be delayed unnecessarily"); *In re Baldwin-United Corp.*, 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985) (holding delay to be undue when "a final determination of the . . . claims . . . is at least three years away").

29. Here, estimation of the Indemnification Claims is both appropriate and mandatory as liquidation of the Indemnification Claims would unduly delay resolution of the Debtors' bankruptcy and distributions under the Plan to holders of Allowed Claims. Even if estimation were not mandatory, it would be appropriate in this case.

30. The Indemnification Parties filed the Indemnification Claims based on speculative litigation that, as they acknowledge in their proofs of claim, has merely been threatened not initiated. The Debtors do not currently intend to bring litigation in which indemnifiable losses might occur and as such there are presently no Indemnification Claims to liquidate.[4]

31. However, even if litigation in which indemnifiable losses might occur were brought immediately, liquidation of the Indemnification Claims would cause an undue delay. Resolution of claims for which a complaint has not even been filed could easily take years as the case winds its way through multiple pleading stages, a potentially complex and lengthy trial, and any subsequent appeal. It is unreasonable for the Debtors, their creditors, and this Court to wait potentially years for litigation to be commenced **that may never even be commenced** before the Plan Administrator makes the Initial Distribution contemplated under the Plan.

32. To hold distribution of all other claims hostage on the contingent and unlikely possibility that the Debtors may be liable for an undetermined and speculative amount of indemnification would be fundamentally unfair and inconsistent with "the fundamental policy of

---

[4] Under the Plan, the right to bring causes of action against the Indemnification Parties will pass to the Plan Administrator, the Debtors do not know whether or not the Plan Administrator will ultimately choose to exercise these rights.

Chapter 11 that a reorganization 'must be accomplished quickly and efficiently.'" *In re Adelphia Bus. Sols., Inc.*, 341 B.R. at 422 (quoting *Bittner*, 691 F.2d at 135-37). Instead, the Debtors can simply preserve the Indemnification Parties' right to receive payment in the event that the Indemnification Parties ultimately have an Allowed Claim.

### B. The Indemnification Claims Should be Estimated at Zero for the Limited Purposes of the Initial Distribution.

33. Estimation was "designed to promote a fair distribution to creditors through a realistic assessment of uncertain claims[.]" *In re Cont'l Airlines*, 981 F.2d 1450, 1461 (5th Cir. 1993) (citation omitted). The bankruptcy court is granted "substantial discretion . . . in determining the appropriate means to estimate the claims." *FTX Trading*, 2024 Bankr. LEXIS 1512, at *17 (citing *In re Specialty Prods. Holding Corp.*, No. 10-11780, 2014 U.S. Dist. LEXIS 15682, at *1 (D. Del. Feb. 7, 2014)); *see also Bittner*, 691 F.2d at 135 ("Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue."); *In re Thomas McKinnon Sec.*, 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1996) ("The Code and the Federal Rules of Bankruptcy are silent as to an applicable procedures governing the estimation hearing. In filling the void, courts have determined that judges are to use '…whatever method is best suited to the circumstances.'") (citation omitted). "The only requirement is that the value of the claim be determined in accordance with the legal rules that will govern the final amount of the claim, and 'there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code.'" *In re Armstrong World Indus.*, 348 B.R. 111, 123 (D. Del. 2006) (quoting *Bittner*, 691 F.2d at 136).

34. When estimating based on a factual contingency—such as whether litigation in which indemnifiable losses might occur will be brought—courts may assess the "number of

possible outcomes . . . range[ing] from a claim value of zero to the full amount demanded." *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994).

35. Here, the Indemnification Claims would be general unsecured claims against the Debtors. Assuming the Indemnification Claims become Allowed Claims, the Indemnification Parties would be entitled to share *pari passu* with all other holders of general unsecured claims.[5] The Indemnification Parties will have a more than sufficient cushion to protect their rights while estimating the Indemnification Claims at zero for the limited purposes of the Initial Distribution.

36. First, the Initial Distribution contemplates distributing at a maximum fifty percent of available cash, leaving at least fifty percent available for future distributions. The Indemnification Parties will maintain their rights to seek payment of future distributions if it becomes necessary.

37. Second, the Debtors have $35,000,000 under the D&O Policies for use by the Indemnification Parties and any claims for advancement or indemnification can be satisfied by looking to the D&O Policies.[6]

38. Together, the remaining cash and D&O Policies create a significant asset pool that will not be part of the Initial Distribution and will be available to the Indemnification Parties to satisfy a pro rata catch-up payment if necessary. The assets available following the Initial Distribution create a reasonable and conservative cushion for the Indemnification Parties in the event that litigation in which indemnifiable losses might occur is brought.

---

[5] Nothing herein or in the proposed Order is intended to or shall be deemed to waive any objection or arguments by the Committee and/or the Plan Administrator including, but not limited to, that the Indemnification Parties are not entitled to indemnification and/or advancement under applicable state law.

[6] Nothing in this Motion or in the proposed Order shall or is meant to reduce or expand any parties' rights under the D&O Policies, ultimately entitlement to insurance proceeds is subject to the terms of the applicable insurance policy.

39. As such, the Court should estimate the Indemnification Claims at zero for the limited purpose of permitting the Initial Distribution to holders of Allowed Claims as contemplated under the Plan.

## RESERVATION OF RIGHTS

40. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or Plan Administrator's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; or (e) a waiver or limitation of the Debtors' or Plan Administrator's rights under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or Plan Administrator's rights to subsequently dispute such claim.

## SEPARATE CONTESTED MATTERS

41. Each request herein seeking to estimate a claim constitutes a separate contested matter as contemplated by Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). Any order entered by this Court with respect to this Motion shall be deemed a separate order with respect to each estimated claim.

## NOTICE

42. Notice of this Motion has been given to (a) the United States Trustee for the District of Delaware; (b) counsel for the Official Creditors' Committee; (c) the Indemnification Parties;

(d) the Debtors' insurance carriers; and (d) if not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## CONCLUSION

43.     The Indemnification Claims request an unliquidated amount for contingent and entirely speculative claims for advancement or reimbursement. The Indemnification Parties seek to protect themselves against litigation that not only has not been brought, but may ***never*** be brought. Even if it were possible to resolve the (currently non-existent) litigation in which indemnifiable losses might occur, the delay caused by liquidating the Indemnification Claims would be undue. Together, the cash remaining and the D&O Policies create a significant asset pool that will not be part of the Initial Distribution and will be available for future distribution including to the Indemnification Parties if necessary and appropriate. This will provide an adequate cushion in the event that litigation in which indemnifiable losses might occur is brought. As such, the Court should estimate the Indemnification Claims at zero for the limited purpose of permitting the Initial Distribution to holders of Allowed Claims as contemplated under the Plan.

WHEREFORE, the Debtors respectfully requests that this Court enter the Proposed Order and grant the Debtors such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: November 25, 2025<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>/s/ *Katherine S. Dute*<br>Matthew B. McGuire (No. 4366)<br>Matthew R. Pierce (No. 5946)<br>Joshua B. Brooks (No. 6765)<br>Katherine S. Dute (No. 6788)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Email: mcguire@lrclaw.com<br>pierce@lrclaw.com<br>brooks@lrclaw.com<br>dute@lrclaw.com<br><br>- and -<br><br>**K&L GATES LLP**<br>Jeffrey T. Kucera (admitted *pro hac vice*)<br>Southeast Financial Center, Suite 3900<br>200 South Biscayne Blvd.<br>Miami, Florida 33131<br>Telephone: (305) 539-3300<br>Email: jeffrey.kucera@klgates.com<br><br>- and -<br><br>Margaret R. Westbrook (admitted *pro hac vice*)<br>301 Hillsborough Street, Suite 1200<br>Raleigh, North Carolina 27603<br>Telephone: (919) 743-7300<br>Email: margaret.westbrook@klgates.com<br><br>*Counsel to the Debtors and Debtors in Possession* |