IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ATECH (PARENT) RESOLUTION CORP, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12796 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: Dec. 16, 2025, at 2:00 p.m. (ET)**<br>**Objection Deadline for U.S. Trustee: Dec. 8, 2025, at 4:00 p.m. (ET)**<br><br>**Re D.I. No. 825** |

## UNITED STATES TRUSTEE'S LIMITED OBJECTION TO JOINT CHAPTER 11 PLAN OF ATECH (PARENT) RESOLUTION CORP AND ITS DEBTOR AFFILIATES

Andrew R. Vara, the United States Trustee for Region 3 ("U. S. Trustee"), through his counsel, files this limited objection (the "Objection") to confirmation of the *Joint Chapter 11 Plan of ATech (Parent) Resolution Corp and Its Debtor Affiliates* (the "Plan") filed at D.I. 825, and in support of his Objection states:

### PRELIMINARY STATEMENT

1. The Plan contains impermissible provisions whereby the Plan as a whole is proposed to be treated as a settlement. Plan Arts. VIII. C and D. This Plan is not a settlement; the Plan is governed by the applicable confirmation standards under the Bankruptcy Code

2. The Plan proponents bear the burden of establishing that the relief sought in the Plan is consistent with the Bankruptcy Code and applicable case law and should revise the relevant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ATech (Parent) Resolution Corp. (9046), ATech Resolution Corp. (5617), GD Chips Resolution Corp. (7929), and RF Chips Resolution Corp. (1138). The Debtors' mailing address is c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, Attn: Mark D. Podgainy.

1

sections and remove the objectionable language. For these reasons, set forth in more detail below, confirmation of the Plan should be denied absent further revision.

## JURISDICTION AND STANDING

3. Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the proposed confirmation of the Plan and this Objection.

4. Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

5. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in chapter 11 cases and to comment on the filings.

6. Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to the Plan and this Objection.

## BACKGROUND

7. On December 16, 2024, the Debtors filed the voluntary chapter 11 petitions which initiated the above-captioned cases. D.I. 1.

8. On December 30, 2024, the U.S. Trustee appointed an official committee of unsecured creditors. D.I. 93.

9. On September 30, 2025, the Debtors filed an earlier version of the Plan. D.I. 780. The Debtors thereafter filed a revised (solicitation version) of the Plan after entry of the Order approving the Disclosure Statement. D.I. 782 & 825.

10. The hearing on confirmation of the Plan is scheduled for December 16, 2025. The U.S. Trustee's objection deadline has been extended to December 5, 2025.

### *RELEVANT PLAN PROVISIONS*

11. The Plan contains a "Releases by the Debtors" provision, which states:

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or

upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that nothing in the Plan shall be construed to release the Released Parties from gross negligence, willful misconduct or actual fraud as determined by a Final Order; and provided, further, that any right to enforce the Plan, Plan Supplement, and the Confirmation Order is not released.

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.C is: (1) a good-faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Claims and Interests; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.**

Plan Art. VIII.C (emphasis supplied).

12. The Plan contains a "Consensual Third-Party Releases" provision, which states:

If a holder of a Claim or Interest opts-in to the Consensual Third Party Releases then each such holder of a Claim or Interest shall be a Releasing Party and, as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the

Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that nothing in the Plan shall be construed to release the Released Parties from gross negligence, willful misconduct or actual fraud as determined by a Final Order; and provided, further that any right with respect to the Plan, Plan Supplement and the Confirmation Order is not released.

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.D is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties or the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.**

Plan Art. VIII.D (emphasis supplied).

## ARGUMENT

### I. The Proposed Release Provisions Impermissibly Deem The Plan a Settlement.

13.     Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to "provide for [] the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A) (emphasis added).

14.     Section 1123(b)(3) only allows a debtor to settle claims it has against others; it does not allow a debtor to settle claims that creditors and interest holders may have against it, which is what Plan § 6.9 seeks to do. *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("The only reference in [section 1123(b)] to adjustments of claims is the authorization for a plan to provide for 'the settlement or adjustment of any claim or interest belonging to the debtor or to the estate.' . . . It is significant that there is no parallel

authorization regarding claims against the estate.") (quoting section 1123(b)(3)(A)) (internal citation omitted).

15. The resolution of claims against the Debtors is governed by sections 1129 and 1141.

16. A plan may incorporate one or more negotiated settlements, but a plan is not itself a settlement. Sending a plan to impaired creditors for a vote is not equivalent to parties negotiating a settlement among themselves. A "settlement" is "an agreement ending a dispute or lawsuit." BLACK'S LAW DICTIONARY (10th ed. 2014). An "agreement" is "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Id.*

17. Approval of settlements is governed by Federal Rule of Bankruptcy Procedure 9019, which provides that, "[o]n motion by the trustee [or chapter 11 debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." But, because a "settlement" requires an agreement between the settling parties, Rule 9019 governs only parties that have entered into an express settlement agreement; it is not a blanket provision allowing general "settlements" to be unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to "settle" their claims.

18. The decision whether to approve a settlement under Rule 9019 is left to the sound discretion of the bankruptcy court, which "must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *Wash. Mut., Inc.*, 442 B.R. at 338 (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). In contrast, chapter 11 plans are subject to the requirements of Bankruptcy Code sections 1123 and 1129. What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" outside of the plan context is different from what may be permissible under a plan.

19.  Here, Plan Articles VIII C and D purport to treat the Plan itself as if it were a Rule 9019 "settlement."  Further, it appears these sections are not limited to settling claims belonging to the Debtors or the estates.  Thus, Articles VIII C and D exceed the scope of what can be settled under section 1123(b)(3)(A).  Unless these sections are narrowed so that (i) they pertain only to claims the Debtors are settling against others and (ii) the Plan itself is not a settlement, the Plan does not comply with section 1123(b)(3)(A) and does not satisfy section 1129(a)(1).

## CONCLUSION

**WHEREFORE**, the U.S. Trustee requests that this Court enter an order (i) denying confirmation of the Plan and (ii) granting such other relief that the Court deems just and proper.

Dated:  December 5, 2025
         Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGION 3**

By:  */s/ Jonathan W. Lipshie*
      Jonathan W. Lipshie
      Trial Attorney
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox35
      Wilmington, Delaware 19801
      Phone: (302) 483-2304
      Email: jon.lipshie@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Jonathan W. Lipshie, hereby attest that on December 5, 2025, I caused a copy of this Objection to be served by electronic service on the registered parties via the Court's CM/ECF system and upon the following parties:

*/s/ Jonathan W. Lipshie*
Jonathan W. Lipshie
Trial Attorney
