## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ATECH (PARENT) RESOLUTION CORP., *et al.*,[1] | Case No. 24-12796 (LSS) |
| | (Jointly Administered) |
| Debtors. | **Related D.I.: 860** |

### ARTHUR GEISS AND JERRY NEAL'S OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER SECTION 502(c) OF THE BANKRUPTCY CODE ESTIMATING CERTAIN CLAIMS FOR PURPOSES OF AN INITIAL DISTRIBUTION

Arthur Geiss ("Geiss") and Jerry Neal ("Neal" and together with Geiss, the "Indemnified Directors") hereby file this objection (the "Objection") to the *Debtors' Motion for Entry of an Order Under Section 502(c) of the Bankruptcy Code Estimating Claims for Purposes of an Initial Distribution* [D.I. 860] (the "Estimation Motion"), filed by ATech Resolution Corp. (f/k/a Akoustis, Inc.) and its affiliated debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases. In support of this Objection, the Indemnified Directors respectfully state as follows:

### PRELIMINARY STATEMENT

1. The Debtors filed the Estimation Motion absent a declaration or other evidence. Consequently, the Indemnified Directors have had to rely upon their own assumptions as to the Debtors' and any successor's motives, potential causes of action, and whether the Indemnified Directors' will ultimately be liquidated.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ATech (Parent) Resolution Corp. (9046), ATech Resolution Corp. (5617), GD Chips Resolution Corp. (f/k/a Grinding and Dicing Services, Inc.) (7929), and RF Chips Resolution Corp. (1138). The Debtors' mailing address is c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, Attn: Mark D. Podgainy.

2.     The Estimation Motion prejudices the Indemnified Directors in favor of other unsecured creditors in these cases.  The Debtors assert, "It is unreasonable for the Debtors, their creditors, and this Court to wait potentially years for litigation ***to be commenced*** that may never even ***be commenced*** before the Plan Administrator makes the Initial Distribution contemplated under the Plan." Est. Mot., ¶ 31 (emphasis added).[2]  Passive voice aside, the Debtors and their successors control whether and when such claims will be brought.  The Debtors control the timeline of these cases.  The Debtors control which parties are released under the Plan (defined below), and which causes of action are retained.  The Debtors have the sole right to bring potential litigation against the Indemnified Directors.  Delay can only be attributable to the Debtors.

3.     Under the circumstances, there is no basis to limit the Indemnified Directors' respective rights.  The novel relief requested in the Estimation Motion finds no support in the Bankruptcy Code and should be denied.  However, if this Court estimates the Indemnified Directors' claims as $0.00 for purposes of the Initial Distribution (defined below), this Court should require the Debtors to establish a reserve adequate to cover the Indemnified Directors' presently contingent and unliquidated claims and establish procedures for the release of such reserve to the Indemnified Directors when their claims are liquidated.

## LIMITED BACKGROUND

4.     On September 30, 2025, the Debtors filed the *Disclosure Statement to the Joint Chapter 11 Plan of ATech (Parent) Resolution Corp. and Its Debtor Affiliates* [D.I. 781] (the "Disclosure Statement") and the *Joint Chapter 11 Plan of ATech (Parent) Resolution Corp. and Its Debtor Affiliates* [D.I. 780] (the "Plan").  On November 24, 2025, the Debtors filed a Plan

---

[2]     *See also* Est. Mot, ¶ 43 ("The Indemnified Parties seek to protect themselves against litigation that not only has not ***been brought***, but may never ***be brought***."); ¶ 30 ("The Indemnification Parties filed the Indemnification Claims based on speculative litigation that … has merely ***been threatened*** not initiated.").

supplement, identifying U.S. Bank Global Corporate Trust as "Plan Administrator."  Article VI.C.1. of the Debtors' Plan provides, in relevant part:

> The Plan Administrator shall process and make an initial distribution by no later than 30 days after the Effective Date and such initial distribution[3] shall distribute to holders of Allowed Claims (together with, and accounting for, any reserves pursuant to the Plan for Disputed Claims or Interests),[4] no less than half of the cash on hand of the Post-Effective Date Debtors at such time.

5.       On October 16, 2025, the Debtors filed amended schedules [D.I. 791–794], which amended schedules list the Indemnified Directors and other representatives of the Debtors.  In accordance with the Court's bar date order [D.I. 555], within 30 days from the Debtors amendment of their schedules, the Indemnified Directors each filed proofs of claim [Claims Nos. 97–104] (the "Proofs of Claim") against the Debtors.  Each Proof of Claim asserts all claims related to and arising out of the Indemnified Directors' respective indemnification and advancement rights under (i) Article VII of the Certificate of Incorporation of Debtor ATech (Parent) Resolution Corp. (f/k/a Akoustis Technologies, Inc.) ("Akoustis"), (ii) Article VII of Akoustis's Bylaws, and (iii) those certain Indemnification Agreements, each dated as of January 19, 2024 (the "Indemnification Agreements").

6.       On May 30, 2025, Qorvo, Inc. ("Qorvo") filed proofs of claims [Claim Nos. 53, 54], each asserting claims for $59,883,518.14 (the "Qorvo Claims").  Based upon the proofs of claim, the Qorvo Claims arise from a May 20, 2024 jury award in the case of *Qorvo, Inc. v. Akoustis Technologies, Inc.*, Case No. 21-1417 (JPM) in the United States District Court for the District of Delaware (the "Infringement Case") in the amount of $38,595,023.00, plus attorneys'

---

[3]       As discussed in the Estimation Motion, this is the "Initial Distribution" for which the Debtors seek to limit the Indemnified Directors' access.

[4]       While this mentions a reserve for Disputed Claims or Interests, it does not appear that Article VII of the Plan (or anywhere else in the Plan) actually establishes a Disputed Claims or Interests reserve.

fees and pre- and post-judgment interest.  The Indemnified Directors were neither defendants nor participated in the Infringement Case.

7.      On July 10, 2025, the Court entered an order [D.I. 672] approving the Debtors' and Qorvo's compromise to allow each of the Qorvo Claims in the amount of $59,133,518.14.  The Indemnified Directors were not party to Qorvo's and the Debtors' negotiations or compromise. On December 3, 2025, Qorvo filed a reservation of rights [D.I. 866] to the Plan.  Paragraph two of that reservation of rights states plainly, "Qorvo's support for the Plan is based upon the Debtors' and Creditor Committee's representations to Qorvo that they will prosecute the Estimation Motion."

## OBJECTION

8.      First and foremost, the Indemnified Directors deny any allegations of wrongdoing on their parts and believe any allegations to the contrary are without merit.  Notwithstanding, the Estimation Motion is a half-baked measure to foist responsibility onto the Indemnified Directors for the Debtors' failure to act.  The request finds no support in the Bankruptcy Code and the Debtors have not cited to any analogous case law.  Nor does the Estimation Motion provide this Court with an adequate process to estimate the Indemnified Directors' claims at $0 for purposes of an initial distribution, the numbers belie no prejudice to the Indemnified Directors.  While the Indemnified Directors were hopeful to reach an amicable solution to avoid litigation, it appears that certain of the Debtors' creditors have forced their hands.

### A. Estimation of the Indemnified Directors' claims for purposes of the Initial Distribution is inappropriate under section 502(c) of the Bankruptcy Code.

9.      Debtors are afforded two paths to estimate creditor claims: Bankruptcy Rule 3018 and section 502(c) of the Bankruptcy Code.  The former permits the court to temporarily allow or

1626954954.2

disallow creditors claims for purposes of enabling or restricting plan voting.  The latter revolves

around the issue of allowance.  Section 502(c) provides:

> (c) there shall be estimated for purpose of allowance under this section—

>> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

>> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

10.     The Debtors rightly point to the dual purpose of estimation: (1) avoid prolonged

resolution of outside litigation; and (2) promote fair distribution of funds through a realistic

assessment of uncertain claims.  *See* Est. Mot., ¶ 22 (quoting *In re Enron Corp.*, No. 01-16034

(AJG), 2006 WL 544463, at *3 (Bankr. S.D.N.Y. Jan. 17, 2006)).  However, in furtherance of that

dual-purpose, section 502(c) does not establish a method for debtors to estimate claims for limited

allowance for *distribution purposes*.   Rather, unlike the temporary allowance permitted by

Bankruptcy Rule 3018, "by its very nature, estimation under section 502(c) results in allowing a

claim for purposes of the entire case, and is no different than a claim allowed under section 502(a)

or (b)."  *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS), 2016 WL 4250681, at *3 (Bankr.

D. Del. Aug. 8, 2016) (citing 4 Collier on Bankruptcy ¶ 502.04[3] (Alan Resnick & Henry J.

Sommer eds., 16th ed.).  The Estimation Motion is devoid of case law supporting a claw back of

the effects of 502(c) estimation to temporarily allow the Indemnified Directors' claims in the

amount of $0.00 so that the Plan Administrator may distribute half of the Debtors' cash on hand,

but then immediately after, revert the Indemnified Directors' claims to disputed and challengeable.

11.     In fact, the Estimation Motion is replete with caveats to the Indemnified Directors'

potential future claims.  *See, e.g.*, Est. Mot., ¶ 30 ("The Debtors do not ***currently*** intend to bring

litigation in which indemnifiable losses might occur ….."); *id.* at n.4 ("Under the Plan, the right to

bring causes of action against the Indemnification Parties will pass to the Plan Administrator, the Debtors ***do not know*** whether or not the Plan Administrator will ultimately choose to exercise these rights.") (emphasis added).  It would be inequitable and discriminatory under section 1123 of the Bankruptcy Code to preclude the Indemnified Directors' entitlement to share in the Initial Distribution given the likelihood that the Debtors or the Plan Administrator will ultimately bring claims.  Of course, the Debtors can stipulate to the release of claims against the Indemnified Directors today and avoid this issue entirely.

12.     Next, the Estimation Motion fails to identify any process by which this Court should estimate the Indemnified Directors' claims.  The Third Circuit has stated clearly that "Congress intended the [estimation] procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue." *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982).  However, to accommodate the underlying purposes of the Bankruptcy Code, "[t]he only requirement is that the value of the claim be determined in accordance with the legal rules that will govern the final amount of the claim, and 'there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code.'" *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 123 (D. Del. 2006) (quoting *Bittner*, 691 F.2d at 135).  Upon information and belief, any potential claim against the Indemnified Directors would be heard by the Delaware Chancery Court and liability would be established according to Delaware law.  The legal rules governing the final amount of any potential claim would flow from that court's rules and the DGCL. *See, e.g.*, *Armstrong World Indus., Inc.*, 348 B.R. at 123 ("Because asbestos claims arise under state law, the claims must be valued in accordance with substantive state tort law.").

1626954954.2

13.     The Estimation Motion does not ask this Court to hold a mini-trial or provide the Indemnified Directors with any semblance of due process to which they would be entitled if and when the Debtors or their successors decide to pursue causes of action.  Each of the courts in the cases cited by the Debtors established or approved a timely process to avoid prolonged litigation and promote fair distributions of limited assets.  *See, e.g.*, *id.* at 114–15 (discussing having heard from three estimation experts regarding future asbestos personal injury liability during a three-day hearing); *In re Thomson McKinnon Sec., Inc.*, 191 B.R. 976, 979–80 (Bankr. S.D.N.Y. 1996) (noting each party was entitled to present one witness and introduce one deposition and the court was supplied with extensive memoranda and affidavits "upon which a reasonable estimation may be based"); *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 517–18 (Bankr. E.D.N.Y. 1994) (noting parties' election to waive the right to a hearing and instead asked the court to make its decision based upon written submission and the court's consequent methodology of relying upon "illations" or inferences from the factual statements provided by the parties).  There is no process here.  The Debtors chose only to threaten claims and so they believe this Court can simply conclude, without any record evidence, that a $0.00 label is appropriate and can confirm their Plan. That cannot suffice.  The Indemnified Directors refuse to relinquish their contingent entitlement to distributions through such a perversion of the estimation process.

14.     Finally, the Indemnified Directors agree that estimation under section 502(c) is mandatory if the Debtors establish that the fixing or liquidation of the Indemnified Directors' potential claims would "unduly delay" the administration of these chapter 11 cases.  *See In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) (citing *In re Apex Oil Co.*, 107 B.R. 189, 192 (Bankr. E.D. Mo. 1989)).  There is no record in support of any delay other than the Debtors' failure to pursue any such claim.  However, that mandatory direction does not help the

7

Debtors.  Any undue delay here is attributable wholly to the Debtors.  None of the cases cited in the Estimation Motion considers whether a debtor's own inaction can support an "undue delay" finding.  The jury award in the Infringement Case was handed down over 18 months ago.  The Debtors will have filed these chapter 11 cases exactly one year ago as of the hearing scheduled for the Estimation Motion.  This delay prejudices the Indemnified Directors as now demonstrated by the Estimation Motion.  *See, e.g.*, *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 949 (3d Cir. 1971).  Any concern regarding the cost of pursuing litigation contemporaneously with these chapter 11 cases is unfounded.

15.     To avoid the patent appearance of prejudice to the Indemnified Directors, the Debtors assert, "Together, the remaining cash and D&O Policies create a significant asset pool that will not be part of the Initial Distribution and will be available to the Indemnification Parties to satisfy a pro rata catch-up payment if necessary.  The assets available following the Initial Distribution create a reasonable and conservative cushion …." Est. Mot., ¶ 28.  There is no record to support these assertions.  The Debtors note that they maintain directors and officers liability insurance (the "D&O Policies") in the amount of $10,000,000 side A coverage with an additional $25,000,000 available under side A-B-C coverage.  Est. Mot., ¶ 18.  First, the Indemnified Directors have no basis to conclude that any potential claims will not exceed this aggregate $35,000,000 in purported coverage.  The only baseline figure is the Qorvo Claim in the amount of $59,133,518.14.  And notably, paragraph 37, note 6 of the Estimation Motion confirms the infirmity as to parties' rights under the D&O Policies and whether any party will ultimately be entitled to insurance proceeds.  Second, to the extent the Indemnified Directors are covered by the D&O Policies and the potential claims exceed that aggregate coverage, paragraph 35, note 5 of the Estimation Motion reserves the Debtors' rights to challenge whether the "Indemnification Parties

8

are not entitled to indemnification and/or advancement under applicable state law"). The Debtors' statements of comfort ring hollow.

16.     The Debtors want the benefits of estimation without the consequences. The Court should force the Debtors to make a decision. If they want to preclude the Indemnified Directors' participation in the Initial Distribution, the Debtors can allow the Indemnified Directors' claims at $0.00 and preclude themselves and any successor in interest from pursuing claims in the future. If they are unwilling to do so, as discussed further below, the Court should direct the Debtors to reserve funds.

**B.  If the Court estimates the Indemnified Directors' claims, it must condition such estimation on the Debtors' establishment of an adequate reserve.**

17.     Even if this Court deems estimation the proper remedy, the Court should direct the Debtors to establish a reserve adequate to cover advancement and indemnification claims arising from such potential claims against the Indemnified Directors. Without an adequate reserve, the Debtors' Plan violates section 1123(a)(4) of the Bankruptcy Code. *See In re Motors Liquidation Co.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011):

> Section 1123(a)(4) requires a plan to provide the same treatment for each claim of a particular class. That means, as a practical matter, that all ***allowed*** claims within a particular class should get the same treatment, and ***that if claims are disputed and not yet allowed (but have the potential to be allowed)***, reasonable measures must be taken to ensure that the required same treatment is received if and when they're allowed.

(emphasis added).

18.     The Debtors have yet to identify a claim against the Indemnified Directors. Instead, the Debtors and the Committee have threatened vague causes of action against the Indemnified Directors arising out of the Infringement Case. Using that suit as the only baseline, the simplest answer is to direct the Debtors to reserve $24,133,518.14 to satisfy potential claims against the

9

Indemnified Directors: (x) the allowed Qorvo Claims ($59,133,518.14); *minus* (y) the aggregate insurance coverage under the D&O Policies ($35,000,000).[5]

19.     The Debtors are free to file a claim letter with their insurance carrier identifying a lesser value of any claims against the Indemnified Directors.  Until they do so, however, the only baseline figures available and potential evidence before this Court are the Qorvo Claims and the D&O Policies.  The Indemnified Directors expect the Debtors and the Committee to respond that such a significant reserve exceeds the Debtors' cash on hand and renders the Plan unconfirmable. However, that is a confirmation issue for the Debtors to remedy, and the Indemnified Directors need not carry the feasibility of the Debtors' Plan on their shoulders.

## RESERVATION OF RIGHTS

20.     Nothing in this Objection is intended, nor shall be deemed or construed to be a waiver of any rights, claims, defenses, or other interests arising out of or related to any claims eventually brought against the Indemnified Directors by the Debtors, the Plan Administrator, or any other third party.

*[Remainder of Page Intentionally Left Blank]*

---

[5]     This figure is conservative and does not take into account advancement for defense costs, for which the Indemnified Directors are entitled under the Indemnification Agreements and the Debtors' organizational documents.

1626954954.2

**WHEREFORE**, the Indemnified Directors respectfully request that this Court deny the Estimation Motion or, in the alternative, grant the relief requested on the condition that the Debtors establish a reserve in an amount no less than $24,133,518.14, and grant such other and further relief as the Court deems just and proper.

Dated: December 9, 2025
       Wilmington, Delaware

**DLA PIPER LLP (US)**

/s/ *Stuart M. Brown*
Stuart M. Brown (DE 4050)
Matthew S. Sarna (DE 6578)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5659
Email: stuart.brown@us.dlapiper.com
      matthew.sarna@us.dlapiper.com

*Counsel to Arthur Geiss and Jerry Neal*

1626954954.2

## <u>CERTIFICATE OF SERVICE</u>

I, Stuart M. Brown, hereby certify that on this 9th day of December, 2025, caused a true and correct copy of the foregoing *Arthur Geiss and Jerry Neal's Objection to the Debtors' Motion for Entry of an Order Under Section 502(c) of the Bankruptcy Code Estimating Certain Claims for Purposes of an Initial Distribution* to be served via the Court's CM/ECF system to all parties who subscribed to receive such notice in this case.

 /s/  Stuart M. Brown
Stuart M. Brown (DE 5040)

1626954954.2