# **<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ATECH (PARENT) RESOLUTION CORP, *et al.*,[1] | Case No. 24-12796 (LSS) |
|  | (Jointly Administered) |
| Debtors. |  |

**JOINT CHAPTER 11 PLAN OF**
**ATECH (PARENT) RESOLUTION CORP AND ITS DEBTOR AFFILIATES**

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

**YOU SHOULD NOT RELY ON THE INFORMATION**
**CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE**
**PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

---

**K&L GATES LLP**
Jeffrey T. Kucera
Carly S. Everhardt
Southeast Financial Center, Suite 3900
200 South Biscayne Blvd.
Miami, Florida 33131
Telephone:     (305) 539-3300
Email:          jeffrey.kucera@klgates.com
                carly.everhardt@klgates.com

- and -

Margaret R. Westbrook
301 Hillsborough Street, Suite 1200
Raleigh, North Carolina 27603
Telephone:     (919) 743-7300
Email:          margaret.westbrook@klgates.com

**LANDIS RATH & COBB LLP**
Matthew B. McGuire (No. 4366)
Matthew R. Pierce (No. 5946)
Joshua B. Brooks (No. 6765)
919 Market Street
Suite 1800
Wilmington, Delaware 19801
Telephone:     (302) 467-4410
Facsimile:     (302) 467-4450
Email:          mcguire@lrclaw.com
                pierce@lrclaw.com
                brooks@lrclaw.com

*Counsel to the Debtors and Debtors-In-Possession*

Dated:  December 11, 2025

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: ATech (Parent) Resolution Corp. (9046), ATech Resolution Corp. (5617), GD Chips Resolution Corp. (7929), and RF Chips Resolution Corp. (1138).  The Debtors' mailing address is c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, Attn: Mark D. Podgainy.

**TABLE OF CONTENTS**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** ...........................................................1

    A.    Defined Terms ...........................................................1
    B.    Rules of Interpretation ...........................................................11
    C.    Computation of Time ...........................................................12
    D.    Governing Law ...........................................................12
    E.    Reference to Monetary Figures...........................................................12
    F.    Reference to the Debtors or the Post-Effective Date Debtors ...............................12

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** .................13

    A.    Administrative Claims ...........................................................13
    B.    Professional Fee Claims...........................................................13
    C.    Priority Tax Claims...........................................................16

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...........................................................16

    A.    Classification of Claims and Interests...........................................................16
    B.    Treatment of Claims and Interests...........................................................17
    C.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ...........................................................21
    D.    Subordinated Claims ...........................................................21
    E.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes...........................................................21
    F.    Controversy Concerning Impairment ...........................................................21

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**...................................22

    A.    Limited Substantive Consolidation...........................................................22
    B.    Vesting of Assets ...........................................................22
    C.    Sources of Consideration for Plan Distributions ...........................................................22
    D.    Post-Effective Date Debtors ...........................................................22
    E.    Plan Administrator ...........................................................23
    F.    Wind Down ...........................................................24
    G.    Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation...........................................................24
    H.    Tax Returns ...........................................................25
    I.    Dissolution of the Post-Effective Date Debtors...........................................................25
    J.    Cancellation of Securities and Agreements ...........................................................25
    K.    Corporate Action...........................................................26
    L.    Effectuating Documents; Further Transactions ...........................................................27
    M.    Section 1146 Exemption ...........................................................27
    N.    Dissolution of the Creditors' Committee...........................................................27
    O.    Preservation of Causes of Action, If Any ...........................................................27

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................................................................................................**28**

    A.    Rejection of Executory Contracts and Unexpired Leases; Claims Based on Such Rejection ...............................................................................28

    B.    Directors and Officers Insurance Policies.........................................................28

    C.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases ...................................................................................28

    D.    Non-Occurrence of Effective Date ...................................................................29

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .........................................**29**

    A.    Timing and Calculation of Amounts to Be Distributed .......................................29

    B.    Disbursing Agent ...............................................................................................29

    C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ............30

    D.    Compliance with Tax Requirements..................................................................31

    E.    Allocations Between Principal and Accrued Interest .........................................32

    F.    No Postpetition Interest on Claims ...................................................................32

    G.    Foreign Currency Exchange Rate .....................................................................32

    H.    Setoffs and Recoupment ...................................................................................32

    I.    Distributions by the Plan Administrator ...........................................................33

    J.    Claims Paid or Payable by Third Parties and Anti-Double Recovery .................33

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** ........................................................................**34**

    A.    Allowance of Claims...........................................................................................34

    B.    Claims Administration Responsibilities ............................................................34

    C.    Estimation of Claims..........................................................................................34

    D.    Adjustment to Claims Without Objection..........................................................35

    E.    Time to File Objections to Claims .....................................................................35

    F.    Disallowance of Claims......................................................................................35

    G.    Amendments to Claims ......................................................................................35

    H.    No Distributions Pending Allowance .................................................................36

    I.    Distributions After Allowance ...........................................................................36

**ARTICLE VIII. RELEASE, INJUNCTION AND RELATED PROVISIONS** ....................**36**

    A.    Satisfaction of Claims and Termination of Interests..........................................36

    B.    Release of Liens .................................................................................................37

    C.    Releases by the Debtors .....................................................................................37

    D.    Consensual Third Party Releases .......................................................................38

    E.    Exculpation ........................................................................................................39

    F.    Injunction ..........................................................................................................39

    G.    Protections Against Discriminatory Treatment .................................................40

    H.    Document Retention; Books and Records ..........................................................40

    I.    Any Reimbursement or Contribution..................................................................41

    J.    Term of Injunctions or Stays..............................................................................41

**ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** ............................................................................................................41
  A.   Conditions Precedent to the Effective Date ................................41
  B.   Waiver of Conditions ...................................................................42
  C.   Effect of Failure of Conditions ...................................................43

**ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN** ..........................................................................................................43
  A.   Modification and Amendments ....................................................43
  B.   Effect of Confirmation on Modifications ....................................43
  C.   Revocation or Withdrawal of Plan ..............................................43

**ARTICLE XI. RETENTION OF JURISDICTION** .....................................44

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ....................................46
  A.   Immediate Binding Effect ...........................................................46
  B.   Additional Documents ..................................................................46
  C.   Payment of Statutory Fees ...........................................................46
  D.   Reservation of Rights ...................................................................47
  E.   Successors and Assigns ................................................................47
  F.   Determination of Tax Liabilities ..................................................47
  G.   Notices ..........................................................................................47
  H.   Entire Agreement .........................................................................48
  I.   Exhibits .........................................................................................48
  J.   Non-Severability of Plan Provisions ...........................................48
  K.   Votes Solicited in Good Faith ......................................................49
  L.   Closing of Chapter 11 Cases ........................................................49
  M.   Conflicts .......................................................................................49

## INTRODUCTION

ATech (Parent) Resolution Corp. (*f/k/a* Akoustis Technologies, Inc.) ("***ATI***") and its debtor affiliates ATech Resolution Corp. (*f/k/a* Akoustis, Inc.) ("***ATech***"), GD Chips Resolution Corp. (*f/k/a* Grinding and Dicing Services, Inc.) ("***GD Chips***"), and RF Chips Resolution Corp. (*f/k/a* RFM Integrated Device Inc.) ("***RF Chips***"), as debtors and debtors-in-possession, in the above-captioned Chapter 11 Cases propose this joint chapter 11 plan (the "***Plan***"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

The Plan is supported by the Debtors and the Creditors' Committee. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses and assets, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

### ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME AND GOVERNING LAW

**A.**    *Defined Terms*

Capitalized terms used in this Plan have the meanings ascribed to them below.

1.    "***Administrative Claim***" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or prior to the Effective Date pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; and (b) Professional Fee Claims.

2.    "***Administrative Claim Bar Date***" means twenty-one (21) days from service of the notice of Effective Date for all Administrative Claims (excluding Professional Fee Claims) arising, accruing or otherwise due and payable any time during the period from the Petition Date through the Effective Date.

3.    "***Administrative Claim Objection Bar Date***" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be 30 days after the Administrative Claim Bar Date, *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

4.    "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

5.      "*Allowed*" means with respect to any Claim against or Interest in a Debtor, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or a request for payment of an Administrative Claim, as applicable, that is Filed on or before the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code or pursuant to a Final Order a Proof of Claim or request for payment of an Administrative Claim is not required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been allowed by a Final Order.  Except as otherwise specified in the Plan, any Final Order, or as otherwise agreed by the Debtors or the Plan Administrator and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims (as determined by Final Order of the Bankruptcy Court), the amount of an Allowed Claim shall not include interest or fees on such Claim accruing from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed and no Final Order entered allowing such Claim, is not considered Allowed and shall be expunged without further action by the Debtors, the Plan Administrator or the Post-Effective Date Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, Post-Effective Date Debtor or its Estate, as applicable.  For the avoidance of doubt:  (x) a Proof of Claim Filed after the Bar Date or Administrative Claim Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  For avoidance of doubt, the Qorvo Claims deemed allowed by that certain *Order (I) Approving the Compromise Between the Debtors and Qorvo, Inc. and (II) Granting Related Relief* [D.I. 672] are Allowed. "Allow" and "Allowing" shall have correlative meanings.

6.      "*ATI GUC Asset Pool*" means the consolidated Remaining Estate Assets of (i) ATech and ATI after satisfaction in full of all Claims senior in priority to ATech/ATI General Unsecured Claims, (ii) GD Chips and RF Chips after satisfaction of Claims at GD Chips and RF Chips.

7.      "*Available Cash*" means, collectively, all Cash on hand held by the Debtors and Post-Effective Date Debtors on and after the Effective Date.

8.      "*Avoidance Actions*" means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable

section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

10.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of (i) the withdrawal of reference under section 157 of the Judicial Code or (ii) the entry of an order or judgment for which it is determined the United States Bankruptcy Court for the District of Delaware does not have constitutional authority to enter such order or judgment and the parties to such dispute do not consent to entry of such order or judgment by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware.

11.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

12.      "*Bar Date*" means, collectively, the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed pursuant to (a) the Bar Date Order or (b) this Plan.

13.      "*Bar Date Order*" means the *Order Granting Motion of the Debtors for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof* [D.I. 555].

14.      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

15.      "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16.      "*Causes of Action*" means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury,

and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.

17.     "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

18.     "**Claim**" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

19.     "**Claims Register**" means the official register of Claims maintained by the Notice, Claims and Balloting Agent.

20.     "**Class**" means a class of Claims against or Interests in the Debtors as set forth in the Plan in accordance with section 1122(a) of the Bankruptcy Code.

21.     "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

22.     "**Confirmation Date**" means the date on which Confirmation occurs.

23.     "**Confirmation Hearing**" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code at which the Debtors will seek Confirmation of the Plan.

24.     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "**Consensual Third Party Releases**" means the releases set forth in Article VIII.D of the Plan.

26.     "**Consummation**" means the occurrence of the Effective Date.

27.     "**Convertible Notes**" means the 6.0% Convertible Senior Notes due June 15, 2027 issued by ATI under the Convertible Notes Indenture.

28.     "**Convertible Notes Agent**" means The Bank of New York Mellon Trust Company, N.A. (and any successors thereto, as permitted by terms of the Convertible Notes Indenture), in its capacities as Trustee, Registrar, Note Custodian, Conversion Agent, and Paying Agent (the foregoing terms as defined in the Convertible Notes Indenture) and in any other capacities under or related to the Convertible Notes Documents.

29.     "**Convertible Notes Agent Charging Lien**" means the Lien, indemnification, and priority of payment rights in favor of the Convertible Notes Agent under the Convertible Notes Documents, on or with respect to distributions made on account of the Convertible Notes Claims.

30.    "***Convertible Notes Agent Fees***" means all reasonable compensation, fees, costs, expenses, disbursements, and Claims for indemnity, subrogation, and contribution including, without limitation, attorneys' fees and agents' fees, expenses, and disbursements, incurred by or owed to (or estimated to be incurred by or owed to) the Convertible Notes Agent, whether incurred prior to or after the Petition Date (and including any such amounts incurred before, on, or after the Effective Date) under the Convertible Notes Indenture.

31.    "***Convertible Notes Claim***" means all Claims derived from, based upon, related to, on account of, or arising under the Convertible Notes and the Convertible Notes Documents.  For purposes of this Plan, the Convertible Notes Claims shall be deemed Allowed in the amount of $45,477,553.33.

32.    "***Convertible Notes Documents***" means the Convertible Notes Indenture and all related agreements and documents, including, without limitation, all security agreements, authentication orders, letters, pledge agreements, bank account control agreements, and any other agreements, executed by any of the Debtors or their Affiliates in connection with the Convertible Notes, as the foregoing may be amended, restated, supplemented, or otherwise modified from time to time.

33.    "***Convertible Notes Indenture***" means that certain Indenture, dated June 9, 2022, by and among ATI, as issuer, ATech, as guarantor, and the Convertible Notes Agent.

34.    "***Creditors' Committee***" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code, as such committee may be reconstituted from time to time.

35.    "***Debtor***" means one or more of the Debtors, as debtors and debtors-in-possession, each in its respective individual capacity as a debtor and debtor-in-possession in the Chapter 11 Cases.

36.    "***Debtors***" means, collectively: (a) ATI, (b) ATech, (c) GD Chips, and (d) RF Chips.

37.    "***Disclosure Statement***" means the Disclosure Statement to the Joint Chapter 11 Plan of ATech (Parent) Resolution Corp. and its Debtor Affiliates, dated as of September 30, 2025, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

38.    "***Disputed***" means, with respect to any Claim or Interest or any portion thereof, (a) that is not Allowed; and (b) that is not disallowed under the Plan, the Bankruptcy Code or a Final Order.

39.    "***Distribution Record Date***" means the record date for purposes of determining which holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing, or such other date as is designated in the Confirmation Order.

40.    "***DTC***" means The Depository Trust Company or any successor thereto.

41.    "***Effective Date***" means the date that is the first Business Day after the Confirmation Date on which (a) all conditions to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors, with the consent of the Creditors' Committee, declare the Plan effective.

42.    "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

43.    "***Estate***" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

44.    "***Exculpated Party***" means collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Released Directors and Officers solely in their capacity as such and solely with respect to conduct from the Petition Date through the Effective Date, (c) professionals retained by the Debtors pursuant to a Final Order of the Bankruptcy Court, (d) the Creditors' Committee, (e) the members of the Creditors' Committee in their capacity as such (including any member who resigned therefrom); and (f) professionals retained by the Creditors' Committee pursuant to a Final Order of the Bankruptcy Court for conduct from the Petition Date through the Effective Date.

45.    "***Executory Contract***" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

46.    "***Federal Judgment Rate***" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

47.    "***File***" or "***Filed***" means file or filed in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim (including for any Administrative Claim) or Proof of Interest with the Notice, Claims and Balloting Agent.

48.    "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or

rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.  The *Order (I) Approving the Compromise Between the Debtors and Qorvo, Inc. and (II) Granting Related Relief* [D.I. 672] shall be deemed a "Final Order".

49.     "*GD Chips GUC Asset Pool*" means Remaining Estate Assets of GD Chips after satisfaction in full of all Claims senior in priority to GD Chips General Unsecured Claims.

50.     "*General Unsecured Claim*" means any Claim against a Debtor that is not Secured and is not (a) an Administrative Claim, (b) a Priority Claim, (c) a Secured Tax Claim, or (d) an Other Secured Claim.  For the avoidance of doubt, General Unsecured Claims include any claim arising from the rejection of an Unexpired Lease or Executory Contract.

51.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

52.     "*GUC Asset Pools*" means, collectively, the ATI GUC Asset Pool, the GD Chips GUC Asset Pool, and the RF Chips GUC Asset Pool.

53.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

54.     "*Intercompany Claim*" means, a Claim against one Debtor held by another Debtor or an Affiliate of a Debtor.

55.     "*Intercompany Interest*" means, an Interest in one Debtor held by another Debtor or an Affiliate of a Debtor.

56.     "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

57.     "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* [D.I. 182], entered by the Bankruptcy Court on January 18, 2025, as the same may be

modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

58.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

59.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

60.     "*Notice, Claims and Balloting Agent*" means Stretto, Inc. in its capacity as the notice, claims and balloting agent in the Chapter 11 Cases for the Debtors and any successors.

61.     "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases or is otherwise payable by the Purchasers, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

62.     "*Other Secured Claim*" means any Secured Claim that is not a Secured Tax Claim.

63.     "*Permanent Injunction*" means that Permanent Injunction entered by the United States District Court for the District of Delaware on October 15, 2024, in the matter of *Qorvo, Inc. v. Akoustis Technologies and Akoustis, Inc.* (Case No. 1:21-cv-01417) [Dkt.710].

64.     "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

65.     "*Petition Date*" means December 16, 2024, the date on which each of the Debtors commenced the Chapter 11 Cases.

66.     "*Plan*" means this *Joint Chapter 11 Plan of ATech (Parent) Resolution Corp. and Its Debtor Affiliates*, as may be altered, amended, modified, or supplemented from time to time in accordance herewith, including the Plan Supplement (as amended, supplemented, or otherwise modified from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

67.     "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Creditors' Committee in consultation with the Debtors and Qorvo, who will be disclosed in the Plan Supplement, to have all powers and authorities set forth in Article IV of this Plan.

68.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors, with the consent of the Creditors' Committee, no later than seven (7) days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the identity and terms of compensation of the Plan Administrator.

69.     "***Post-Effective Date Debtors***" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

70.     "***Priority Claims***" means, collectively, Priority Tax Claims and Other Priority Claims.

71.     "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

72.     "***Pro Rata***" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests only with respect to that particular Class.

73.     "***Professional***" means an Entity retained pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

74.     "***Professional Fee Bar Date***" means thirty (30) days after the Effective Date.

75.     "***Professional Fee Claim***" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

76.     "***Professional Fee Escrow Account***" means an account funded by the Debtors with the Professional Fee Escrow Amount.

77.     "***Professional Fee Escrow Amount***" means the total amount of the unpaid Debtors' Professionals Fee Claims and the Creditors' Committee Professionals Fee Claims.    The Professional Fee Escrow Amount shall be determined by the Debtors, in consultation with the Creditors' Committee.

78.     "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

79.     "***Proof of Interest***" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

80.     "***Purchasers***" means with respect to the sales of the Debtors' assets during the Chapter 11 Cases, (i) Tune Holdings Corp. for the assets of ATI, ATech, and RF Chips and (ii) Silitronics Solutions, Inc. for the assets of GD Chips.

81.     "***Qorvo***" means Qorvo, Inc.

82.    "***Reinstate***," "***Reinstated,***" or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

83.    "***Released Directors and Officers***" means, each of, and in each case in its capacity as such, the directors and officers of the Debtors listed on the "Released Directors and Officers Schedule" attached to the Plan as <u>Exhibit A</u>.

84.    "***Released Party***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Released Directors and Officers and solely with respect to conduct since August 1, 2024, (c) the Creditors' Committee; (d) the members of the Creditors' Committee (including any member who resigned therefrom); (e) the Convertible Notes Agent and (f) professionals retained in the Chapter 11 Cases pursuant to a Final Order of the Bankruptcy Court; notwithstanding the forgoing, no current or former director or officer of the Debtors shall be a Released Party or otherwise released of any claims pursuant to this Plan unless such director or officer is included on <u>Exhibit A</u>.

85.    "***Releasing Party***" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Creditors' Committee; (c) all holders of Claims that opt-in to the Consensual Third Party Releases; and (d) each current and former Affiliate of each Entity in clause (a) and (c). Notwithstanding the foregoing, the holder of a Claim or Interest shall be neither a Releasing Party nor a Released Party if it is the holder of a Claim or Interest unless it timely submits an opt-in form indicating that such holder opts-in to the Consensual Third Party Releases.

86.    "***Remaining Estate Assets***" means each Debtor's assets on the Effective Date, including Available Cash, any Causes of Action not released pursuant to this Plan, and the proceeds of any such Causes of Actions.

87.    "***RF Chips GUC Asset Pool***" means Remaining Estate Assets of RF Chips after satisfaction in full of all Claims senior in priority to RF Chips General Unsecured Claims.

88.    "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

89.    "***Secured***" means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

90.    "***Secured Tax Claim***" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

91.     "***Stroz***" means Stroz Friedberg, LLC.

92.    "***Subordinated Claim***" means, collectively, any Claim that is subordinated to General Unsecured Claims pursuant to section 510 of the Bankruptcy Code.

93.    "***U.S. Trustee***" means the Office of the United States Trustee for the District of Delaware.

94.    "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

95.    "***Unimpaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

96.    "***Voting Deadline***" means 5:00 p.m. (prevailing Eastern Time) on December 3, 2025.

## B.    *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed, unless otherwise stated, shall mean that document, schedule or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless

otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Post-Effective Date Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order or approval of the Bankruptcy Court or any other Entity; (14) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance or approval rights, including by electronic mail; and (15) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.**     ***Computation of Time***

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.**     ***Governing Law***

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formulation of the applicable Debtor or the Post-Effective Date Debtors, as applicable.

**E.**     ***Reference to Monetary Figures***

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**F.**     ***Reference to the Debtors or the Post-Effective Date Debtors***

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

**A.**      *Administrative Claims*

Except with respect to Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Allowed Administrative Claim, Cash payment in the amount of the Allowed Administrative Claim from the Remaining Estate Assets of the relevant Post-Effective Date Debtor(s) on or as soon as practical after the relevant order granting the Allowed Administrative Claim becomes a Final Order.

Except for Professional Fee Claims, requests for payment of Administrative Claims other than Administrative Claims that had already been paid or became Allowed Administrative Claims during the Chapter 11 Cases, must be Filed and served on the Post-Effective Date Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Post-Effective Date Debtors and the requesting party by the Administrative Claim Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order (each an "***Administrative Claims Order***") that becomes a Final Order.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and the Post-Effective Date Debtors or their property, and such Administrative Claims shall be deemed satisfied as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any notice to or action, order or approval of the Bankruptcy Court or any other Entity. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim that has been Allowed by Final Order.

**B.**      *Professional Fee Claims*

### 1.  Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed by the Professional Fee Bar Date, unless no final request for payment of such Professional Fee Claims is required pursuant to an order of the Bankruptcy Court. Holders of Professional Fee Claims that are required to File a final request for payment of such Professional Fee Claims that do not File such a request

by the Professional Fee Bar Date shall be forever barred, estopped and enjoined from asserting such Professional Fee Claims against the Professional Fee Escrow Account and the Debtors or their property and the Post-Effective Date Debtors or their property, and such Professional Fee Claims shall be deemed satisfied as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any notice to or action, order or approval of the Bankruptcy Court or any other Entity.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code or Order of the Bankruptcy Court.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claims.  Following such twenty-one (21) day period, if no objections have been filed, the Court may enter an order approving the payment of such Professional Fee Claims, without holding a hearing.  The Plan Administrator shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash from the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

### 2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an Order of the Bankruptcy Court.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full to the Professionals pursuant to one or more Final Orders, any remaining funds held in the Professional Fee Escrow shall be returned to the Post-Effective Date Debtors and would be deemed Remaining Estate Assets.

### 3.    Professional Fee Escrow Amount

Except as otherwise provided in the Plan, the Professionals shall provide a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors (including any out-of-pocket expenses (but not the fees and expenses of outside counsel or other advisors) incurred by any member of the Creditors' Committee in connection with such membership), as applicable, projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) Business Days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates; *provided*, *further* that such estimates may be revised and provided to the Debtors no later than two (2) Business Days prior to the anticipated Effective Date.  If a Professional does

not provide an estimate, the Debtors, with the reasonable consent of the Creditors' Committee, may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

### 4. Convertible Notes Agent Fees

Notwithstanding anything in the Plan, Plan Supplement, or Confirmation Order to the contrary, after the Effective Date and exclusively from recoveries otherwise due to Holders of Convertible Notes Claims in Class 4A on a Pro Rata basis of such a Convertible Notes Claims, the Debtors or the Plan Administrator, as applicable, shall indefeasibly pay in full in Cash any outstanding Convertible Notes Agent Fees (including attorneys' fees and expenses) incurred and submitted to Debtors or Plan Administrator, as applicable, consistent with this paragraph. The Convertible Notes Agent Fees shall be paid solely from specific distributions and monies that would otherwise be due and paid to Holders of Convertible Notes Claims in Class 4A, and the Convertible Notes Agent Fees shall not be paid from monies and distributions that would otherwise be due and paid to any other holder of an Allowed Claim (other than Class 4A). The Convertible Notes Agent Fees to be paid contemporaneously with the initial distribution described in Section VI.C.1 shall be estimated to and as of the date of such contemplated distribution, and such estimates shall be delivered (in the form of a summary invoice and without the need for itemized time detail) to the Plan Administrator at least one (1) Business Day before the anticipated date of such initial distribution; provided that the Debtors or the Plan Administrator, as applicable, shall provide the Convertible Notes Agent with at least five (5) Business Days' prior notice of the anticipated date of the initial distribution described in Section VI.C.1. For the avoidance of doubt, any Convertible Notes Agent Fees shall be paid by the Debtors or the Plan Administrator, as applicable, without any requirement for the filing of retention applications, fee applications, proofs of claim, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court approval and shall be paid solely from the recoveries otherwise due to Holders of Convertible Notes Claim on a Pro Rata basis. In addition, the Debtors or the Plan Administrator (as applicable) shall continue to pay the Convertible Notes Agent Fees, solely from the recoveries otherwise due to Holders of Convertible Notes Claim, concurrently with distributions to other Class 4A Allowed Claims, that are related to implementation, consummation, and defense of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document related thereto, including, without limitation, making, directing, or facilitating distributions pursuant to and in accordance therewith, whether incurred before, on or after the Effective Date.

### 5. Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Plan Administrator, on its own behalf or on behalf of the Post-Effective Date Debtors, may employ and pay any professional, including Professionals retained in the Chapter 11 Cases, in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**C.**     *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, Cash payment in the amount of the Allowed Priority Tax Claim from the Post-Effective Date Debtors.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.**     *Classification of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as set forth below.  The Plan shall apply as a substantively consolidated Plan for all of the Debtors for voting purposes only, except as otherwise set forth in Article IV.A.  All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4A | ATech/ATI General Unsecured Claims | Impaired | Entitled to Vote |
| 4B | GD Chips General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4C | RF Chips General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| 6 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 7 | Interests in ATI | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.**     *Treatment of Claims and Interests*

Subject to Article VI hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement and release of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

**1.   Class 1 - Secured Tax Claims**

    i.   *Classification:*  Class 1 consists of all Secured Tax Claims.

    ii.   *Treatment:*  Each holder of an Allowed Secured Tax Claim shall receive from the Remaining Estate Assets of the relevant Debtor at the option of the Plan Administrator: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

    iii. *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

## 2.  Class 2 - Other Secured Claims

    i. *Classification:*  Class 2 consists of all Other Secured Claims.

    ii. *Treatment:*  Each holder of an Allowed Other Secured Claim shall receive from the Remaining Estate Assets of the relevant Debtor  at the option of the Plan Administrator: (a) payment in full in Cash of such holder's Allowed Other Secured Claim; or (b) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired.

    iii. *Voting:*  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

## 3.  Class 3 - Other Priority Claims

    i. *Classification*:  Class 3 consists of all Other Priority Claims.

    ii. *Treatment*:  Each holder of an Allowed Other Priority Claim shall receive from the Remaining Estate Assets of the relevant Debtor payment in full in Cash of such holder's Allowed Other Priority Claim from the Post-Effective Date Debtors or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

    iii. *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

## 4.  Class 4A – ATech/ATI General Unsecured Claims

    i. *Classification*:  Class 4A consists of the ATech/ATI General Unsecured Claims.

    ii. *Treatment:*  Except to the extent that a holder of an Allowed ATech/ATI General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed ATech/ATI General Unsecured Claim shall receive its Pro Rata share of the ATech/ATI GUC Asset Pool, *provided*, *however*, that no holder of an Allowed ATech/ATI General Unsecured Claim shall receive a distribution in excess of the amount of its Allowed Claim.

    iii. *Voting:*  Class 4A is Impaired by the Plan.  Holders of ATech/ATI General Unsecured Claims are entitled to vote to accept or reject the Plan.

**5.  Class 4B – GD Chips General Unsecured Claims**

    i. *Classification*:  Class 4B consists of the GD Chips General Unsecured Claims.

    ii. *Treatment:*  Except to the extent that a holder of an Allowed GD Chips General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed GD Chips General Unsecured Claim shall receive its Pro Rata share of the GD Chips GUC Asset Pool, *provided*, *however*, that no holder of an Allowed GD Chips General Unsecured Claim shall receive a distribution in excess of the amount its Allowed Claim.

    iii. *Voting:*  Class 4B is Unimpaired under the Plan.  Holders of GD Chips General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

**6.  Class 4C – RF Chips General Unsecured Claims**

    i. *Classification*:  Class 4C consists of the RF Chips General Unsecured Claims.

    ii. *Treatment:*  Except to the extent that a holder of an Allowed RF Chips General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed RF Chips General Unsecured Claim shall receive its Pro Rata share of the RF Chips GUC Asset Pool, *provided*, *however*, that no holder of an Allowed RF Chips General Unsecured Claim shall receive a distribution in excess of the amount of its Allowed Claim

    iii. *Voting:*  Class 4C is Unimpaired under the Plan.  Holders of RF Chips General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

**7.  Class 5 - Intercompany Claims**

    i. *Classification:*  Class 5 consists of all Intercompany Interests.

    ii. *Treatment*:  Each Allowed Intercompany Claim shall be (i) canceled or released, or (ii) otherwise set off, settled, or distributed, at the discretion of the Debtors with the consent of the Committee, or, if appointed, the Plan Administrator, in order to comply with the Unimpaired treatment for Claims in Class 4B and 4C and to maximize distribution for Claims in Class 4A.

iii. *Voting*:  Class 5 is Unimpaired under this Plan if Reinstated, or Impaired under this Plan if canceled, released, set off, settled, or distributed. Holders of Intercompany Claims are conclusively deemed to have accepted or rejected this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

## 8.  Class 6 - Intercompany Interests

iv. *Classification:*  Class 6 consists of all Intercompany Interests.

v. *Treatment*:  Each Allowed Intercompany Interest shall remain issued and outstanding except to the extent a Debtor other than ATI is dissolved, liquidated and wound down under the Plan. If a Post-Effective Date Debtor has any Remaining Estate Assets after payment in full of its obligations to Classes 1 through 5 above, then such Remaining Estate Assets shall be transferred to the GUC Asset Pool of the Post-Effective Date Debtor that holds the Intercompany Interests of that Post-Effective Date Debtor to be treated as part of such Post-Effective Date Debtor's GUC Asset Pool for the purposes of Pro Rata distribution to the holders of General Unsecured Claims at the applicable Post-Effective Date Debtor pursuant to this Article III.B.

vi. *Voting*:  Class 6 is Unimpaired under this Plan. Holders of Intercompany Interests are conclusively deemed to have accepted this Plan. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

## 9.  Class 7 - Interests in ATI

i. *Classification:*  Class 7 consists of all Interests in ATI.

ii. *Treatment:*  Interests in ATI will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and the Plan Administrator shall be deemed to own one share of stock in ATI for the benefit of the holders of such Interests in ATI consistent with their former relative priority and economic entitlements, *provided*, *further*, that the Plan Administrator shall not be entitled to exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan. Each holder of Interests in ATI shall neither receive nor retain any property of the Debtors or direct interest in property of the Debtors on account of such Interests; provided, however, that in the event that all Allowed Claims in Classes 1 through 5 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of Interests in ATI may receive its share of any remaining assets of the Debtors consistent with such holder's rights of payment existing immediately prior to the Commencement Date. Unless otherwise determined by the Plan Administrator, on the date that the Chapter 11 Case is closed in accordance with Article XII.L of the Plan, the share of stock issued pursuant to this paragraph shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the

Debtors' estates. The continuing rights of holders of Interests in ATI shall be nontransferable except by operation of law.

iii.   *Voting:*  Class 7 is Impaired under the Plan.  Holders of Interests in ATI are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan

## C.   *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors, with the consent of the Creditors' Committee reserve the right to modify the Plan in accordance with the terms hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## D.   *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise.

## E.   *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

## F.   *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Limited Substantive Consolidation*

This Plan contemplates and is predicated upon the deemed consolidation of all of the Debtors for voting purposes only; *provided, further*, that the Plan shall be deemed a motion by the Debtors seeking the approval, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases and Estates of ATI and ATech for the purposes of voting, distribution, and effectuating and implementing the Plan.  On the Effective Date, each Claim filed or to be filed against ATech or ATI shall be deemed filed only against ATech and shall be deemed a single Claim against and a single obligation of ATech and the claims register shall be updated accordingly. This limited substantive consolidation effected pursuant to Article IV.A of the Plan shall not otherwise affect the rights of any holder of any Claim, or affect the obligations of any Debtor with respect to such Claim.

Except as otherwise provided herein, the substantive consolidation set forth in Article IV.A shall not: (i) affect the separate legal existence of the Debtors for purposes other than implementation of the Plan pursuant to its terms; (ii) constitute or give rise to any defense, counterclaim or right of netting or setoff with respect to any Cause of Action vesting in the Post-Effective Date Debtors that could not have been asserted against the Debtors; or (iii) give rise to any right under, any executory contract, insurance contract or other contract to which any Debtor is party, except to the extent required by section 365 of the Bankruptcy Code in connection with the assumption of such contract by the applicable Debtors.

B.    *Vesting of Assets*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the Debtors shall irrevocably transfer, and shall be deemed to have irrevocably transferred, all right, title and interest in and to the Remaining Estate Assets to the Post-Effective Date Debtors, and the Remaining Estate Assets shall automatically vest in the Post-Effective Date Debtors.  Such assets shall be vested and held free and clear of all Liens, Claims, encumbrances and Interests of any kind, except as otherwise provided in the Plan. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator.  The Post-Effective Date Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

C.    *Sources of Consideration for Plan Distributions*

Distributions under the Plan will be funded by the Remaining Estate Assets.

D.    *Post-Effective Date Debtors*

The Debtors shall continue in existence after the Effective Date as the Post-Effective Date Debtors solely for the purposes, at the discretion of the Plan Administrator, of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Post-Effective Date Debtors, (2) resolving any Disputed Claims, (3) paying Allowed Claims, (4) enforcing and prosecuting claims, interests, rights, and privileges under any

Causes of Action retained by the Post-Effective Debtors and not released pursuant to this Plan in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (5) filing appropriate tax returns, and (6) administering the Plan in an efficient manner.  The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

### E.    *Plan Administrator*

On the Effective Date, the authority, power and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole director and the sole officer of the Post-Effective Date Debtors and shall succeed to the powers of the Debtors' directors and officers. From and after the Effective Date, except as provided otherwise in the Plan, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors.

Except as otherwise provided in the Plan or the Confirmation Order, the powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtors and the Post-Effective Date Debtors, as applicable, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the Remaining Estate Assets; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (3) the pursuit of objections to, estimation of and settlements of Claims or Interests, regardless of whether such Claim or Interest is listed on the Debtors' Schedules, other than Claims or Interests that are Allowed pursuant to the Plan; (4) calculating and making distributions as contemplated under the Plan; (5) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtors; (6) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (7) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors; (8) administering and paying taxes of the Post-Effective Date Debtors, including filing tax returns; (9) representing the interests of the Post-Effective Date Debtors before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (10) exercising such other powers as may be vested in it pursuant to an order of the Bankruptcy Court, the Plan, the Confirmation Order, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the Plan Administrator may not use any documents or information, however procured, that in any way, (i) are subject to the Permanent Injunction or (ii) is sequestered information in the possession of Stroz, in either case of the foregoing (i) or (ii), without Qorvo's written consent.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Post-Effective Date Debtors; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its

appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtors shall be terminated.

## 1. Appointment of the Plan Administrator

The Plan Administrator shall be appointed by the Creditors' Committee in consultation with the Debtors and Qorvo. Any successor to the Plan Administrator shall be appointed by the Plan Administrator in consultation with the Post-Effective Date Debtors. The Plan Administrator shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

## 2. Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Post-Effective Date Debtors, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

## 3. Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and subject to agreement by the Creditors' Committee.

## F. *Wind Down*

On and after the Effective Date, the Plan Administrator shall be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall take any and all actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, the Debtors (1) shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests other than the Intercompany Interests and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

## G. *Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful

misconduct or gross negligence, in all respects by the Post-Effective Date Debtors. The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

**H.**      *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**I.**      *Dissolution of the Post-Effective Date Debtors*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan, and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtors shall be deemed to be dissolved without any further action by the Post-Effective Date Debtors, including the filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtors in and withdraw the Post-Effective Date Debtors from applicable states.  For the avoidance of doubt, the Permanent Injunction continues to apply with respect to ATI, ATech, and all persons and entities encompassed by the Permanent Injunction, and Qorvo's rights are expressly retained and preserved with respect thereto.

**J.**      *Cancellation of Securities and Agreements*

Except as otherwise provided in this Plan, the Plan Supplement, Confirmation Order, or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, except for the purpose of evidencing a right to a distribution under this Plan, all shares, certificates, notes, bonds, indentures (including, without limitation, the Convertible Notes Documents), agreements, and purchase rights, options, warrants or other instruments or documents evidencing or creating (directly or indirectly) any indebtedness or obligation of the Debtors, and all obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents, shall be deemed satisfied in full, cancelled, null and void, and of no further force and effect against the Debtors or the Convertible Notes Agent, without any further action on the part of the Debtors or the Convertible Notes Agent; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, the Convertible Notes Documents shall continue in effect solely for the purposes of (a) to the extent not previously paid, allowing holders of Convertible Notes Claims to receive and accept their respective distributions under the Plan, subject to the Convertible Notes Agent Charging Lien; and (b) allowing and preserving the rights of the Convertible Notes Agent to (1) assert or maintain any rights the Convertible Notes Agent may have against any money or property distributable or allocable to holders of Convertible Notes

Claims, including, without limitation, the Convertible Notes Agent Charging Lien; (2) receive compensation or reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation, consummation, and defense of this Plan or the Confirmation Order; (3) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Convertible Notes Agent may have under the Plan, Plan Supplement, Confirmation Order, Convertible Notes Documents, or any other related agreement; and (4) preserve the rights of the Convertible Notes Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, without limitation, to enforce any right or obligation owed to the Convertible Notes Agent or holders of Convertible Notes Claims under the Plan, Plan Supplement, Confirmation Order, or other documents incorporated therein; *provided, further, however,* that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan. Holders of or parties to such cancelled instruments, notes, and other documents will have no rights arising from or relating to such instruments, notes, and other documents or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan or the Confirmation Order, or as may be necessary to effectuate the terms of the Plan. On the Effective Date, the Convertible Notes Agent and its agents, successors, professionals, representatives, and assigns shall be automatically and fully released of all of their duties, responsibilities, and obligations associated with the Convertible Notes Documents.

For the avoidance of doubt, on and after the final distribution on account of the Convertible Notes Claims, (i) the Convertible Notes shall be deemed to be null, void, and worthless, and (ii) at the request of the Convertible Notes Agent, DTC shall take down the relevant positions relating to the Convertible Notes at the request of the Convertible Notes Agent without any requirement of indemnification or security on the part of the Debtors, the Plan Administrator, or the Convertible Notes Agent (as applicable).

## K.    *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including, all actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action required by the Debtors or the Post-Effective Date Debtors in connection with the Plan or corporate structure of the Debtors or Post-Effective Date Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors. The authorizations and approvals contemplated by this section of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**L.**    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Post-Effective Date Debtors without the need for any approvals, authorizations or consents except for those expressly required pursuant to the Plan.

**M.**    *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor or to any other Person) of property under the Plan or pursuant to the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or section 1191 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**N.**    *Dissolution of the Creditors' Committee*

Upon the Effective Date, the Creditors' Committee shall be dissolved, *provided*, *however*, that the Creditors' Committee shall be deemed to continue in existence after the Effective Date solely to undertake all actions it deems reasonably necessary in connection with the prosecution of the final fee applications of Professionals and the reimbursement of any expenses incurred by members of the Creditors Committee.

**O.**    *Preservation of Causes of Action, If Any*

In accordance with section 1123(b)(3) of the Bankruptcy Code, on the Effective Date, any Causes of Action that the Debtors may hold against any Entity that have not been expressly released or sold shall be retained by and vest in the Post-Effective Date Debtors. The Plan Administrator shall have and may exclusively enforce any and all such retained Causes of Action and shall be the representative of the Estates with respect to such retained Causes of Action pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Plan Administrator shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, such retained Causes of Action do not include any Causes of Action with respect to the Released Parties.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Rejection of Executory Contracts and Unexpired Leases; Claims Based on Such Rejection*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected on the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is the subject of a motion to assume such Executory Contracts or Unexpired Leases that is pending on the Effective Date; (2) is a contract, release or other agreement or document entered into in connection with the Plan; or (3) is a directors and officers insurance policy.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Bankruptcy Court Order approving the rejection of the Executory Contracts and Unexpired Leases rejected pursuant to the Plan.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan must be Filed with the Notice, Claims and Balloting Agent within thirty (30) days after the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan that are not Filed within such time shall be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Post-Effective Date Debtors, or the Estates without the need for any objection by the Debtors or the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court.**  Claims arising from the rejection of any Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and treated in accordance with such classification under the Plan.

B.    *Directors and Officers Insurance Policies*

Any insurance policies covering any of the Debtors' current or former directors', managers', officers', and/or employees' liability to which any Debtor is a party shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtors effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies.

C.    *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired*

*Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

D.      *Non-Occurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each holder of an Allowed Claim or Allowed Interest (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth herein.  Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

The Plan Administrator shall make all distributions under the Plan on account of Allowed Claims, *provided*, *however*, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Reserve; *provided further* that all distributions on account of the Convertible Notes Claims shall be made to, or at the direction of, the Convertible Notes Agent for distribution in accordance with the Plan and the procedures specified in the Convertible Notes Documents.

The Plan Administrator shall not be required to give any bond or surety or other security for the performance of his or her duties unless otherwise ordered by the Bankruptcy Court.

Additionally, in the event that the Plan Administrator is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors.

## C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

### 1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.  For the avoidance of doubt, no distribution record date shall apply to holders of public Securities (including the Convertible Notes).  The Plan Administrator shall process and make an initial distribution by no later than 30 days after the Effective Date and such initial distribution shall distribute to holders of Allowed Claims (together with, and accounting for, any reserves pursuant to the Plan for Disputed Claims or Interests), no less than half of the cash on hand of the Post-Effective Date Debtors at such time.

### 2.    Delivery of Distributions

Except as otherwise provided herein, the Plan Administrator shall make distributions to holders of Allowed Claims and Allowed Interests at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Plan Administrator; *provided*, *further*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder, and, *provided*, *further*, that the Plan Administrator shall not impact or impair the quantum of distribution received by the Holder of an Allowed Claim on account of the Holder's applicable Allowed Claim except as otherwise provided in the Plan with respect to the Convertible Notes Claim.  Notwithstanding anything to the contrary in this Plan, the Plan Supplement, or the Confirmation Order, all distributions to holders of Convertible Notes Claims shall be deemed completed when made to (or at the direction of) the Convertible Notes Agent, which shall be deemed to be the single holder of all Convertible Notes Claims for purposes of distributions to be made hereunder.  Subject to the Convertible Notes Agent Charging Lien, the Convertible Notes Agent may (at its election) transfer, direct, or facilitate the transfer of such distributions (and may rely upon information received from the Debtors or the Plan Administrator, as applicable, for purposes of such transfer) through the facilities of DTC in accordance with DTC's customary practices; *provided, however*, that such distributions will only be issued in accordance with DTC book-entry procedures.  For the avoidance of doubt, DTC shall be considered a single holder with respect to distributions made on account of the Convertible Notes.  The Convertible Notes Agent shall not incur any liability whatsoever on account of any distributions under the Plan.  If the Convertible Notes Agent is unable to make, or consents to the Debtors or the Plan Administrator (as applicable) making, such distributions through the facilities of DTC, the Debtors or the Plan Administrator (as applicable) shall make such distribution (subject to the Convertible Notes Agent Charging Lien).  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Convertible Notes Agent shall have no duties, obligations, responsibilities, or liability whatsoever with respect to distributions made or directed to be made by the Convertible Notes Agent or with respect to any

form of distribution that is not DTC eligible, and the Debtors or the Plan Administrator, as applicable, shall make such distributions (subject to the Convertible Notes Agent Charging Lien).

### 3. Minimum Distributions

Notwithstanding any other provision of the Plan, the Plan Administrator will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be fully satisfied pursuant to Article VIII and its holder is forever barred pursuant to Article VIII from asserting that Claim against the Debtors or their property.

### 4. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Plan Administrator has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that all distributions to holders of Allowed Claims that are unclaimed for a period of ninety (90) calendar days after the date of the first attempted distribution shall have its, his or her Claim for such undeliverable distribution deemed satisfied and will be forever barred from asserting any such Claim against the Debtors, the Post-Effective Date Debtors, or their respective property. The Plan Administrator and Post-Effective Date Debtors shall use commercially reasonable efforts to determine such holder's then-current address but shall have no affirmative obligation to locate such current address. Any Cash payment made in the form of a check shall be null and void and deemed unclaimed within the meaning of this paragraph if not cashed within ninety (90) calendar days after date of issuance thereof, and all requests for reissuance of a check must be made to the Post-Effective Date Debtors within ninety (90) calendar days after first issuance. Any distributions that are undeliverable, unclaimed or have not been negotiated within the time period set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code automatically and without need for further notice or order by the Bankruptcy Court and revert back to the Post-Effective Date Debtors notwithstanding any federal, state or other escheat, abandonment or unclaimed property law to the contrary. The Post-Effective Date Debtors shall have no further obligation to make any distribution to the holder of such Claim on account of such Claim, any entitlement of any holder of such Claim to any such distributions shall be extinguished and forever barred, and the Claim(s) of such holder shall be waived and forever barred without further notice or order of the Bankruptcy Court.

### D.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors and the Post-Effective Date Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other

mechanisms they believe are reasonable and appropriate.  The Debtors and the Post-Effective Date Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

The Plan Administrator may require each holder of Allowed Claims to provide a current executed Form W-9, Form W-8 or similar tax form as a prerequisite to receiving any distribution under the Plan by mailing a request for such forms to holders of Allowed Claims potentially entitled to such distributions at the address set forth in any Proof of Claim Filed by such holder or that appears on the Schedules if such holder did not File a Proof of Claim.  Any holder of an Allowed Claim that fails to return the requested tax form to the Plan Administrator within sixty (60) days of the request for same (or within any further time period to which the Plan Administrator may agree), shall be deemed to have forfeited their right to any current, reserved or future distribution provided under the Plan and such Allowed Claim shall be expunged without further notice or order of the Bankruptcy Court.  Any such forfeited distribution shall revert back to the Plan Administrator and the Post-Effective Date Debtors notwithstanding any federal, provincial or state escheat, abandonment or unclaimed property law to the contrary.

## E.    *Allocations Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be allocated first to the principal amount of such Allowed Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

## F.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in a Final Order, the Plan or the Confirmation Order, or required by applicable law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

## G.    *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

## H.    *Setoffs and Recoupment*

Except as expressly provided in this Plan, the Post-Effective Date Debtors and the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code, set off or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims and rights that the Post-Effective Date Debtors may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Post-Effective Date Debtors and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another

court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Post-Effective Date Debtors or their successors of any and all claims and rights that such entities or their successors may possess against the applicable holder.  In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has or intends to preserve any right of recoupment.

**I.**     ***Distributions by the Plan Administrator***

The Plan Administrator shall not be obligated to make a distribution that would impair the ability of the Plan Administrator to pay the expenses incurred by the Plan Administrator or the Post-Effective Date Debtors.

**J.**     ***Claims Paid or Payable by Third Parties and Anti-Double Recovery***

**1.     Claims Paid by Third Parties**

The Debtors or the Post-Effective Date Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Post-Effective Date Debtor.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Post-Effective Date Debtors on account of such Claim, such holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the applicable Debtors or Post-Effective Date Debtors, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Debtors or the Post-Effective Date Debtors, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**2.     Claims Payable by Third Parties**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's payment and upon satisfaction of any deductible or self-insured retention has been satisfied, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without

any further notice to or action, order, or approval of the Bankruptcy Court. The Plan Administrator or Post-Effective Date Debtors shall provide notice to the holder of such satisfaction.

### 3. No Double Recovery

For any Claim for which more than one Debtor is jointly and severally liable or asserted against one or more Debtor for the same liability, to the extent the holder of such Claim has received payment or distribution under the Plan in full on account of an Allowed Claim in accordance with Article III.B, such Allowed Claim shall be deemed satisfied and expunged from the claims registry without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### 4. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

A.  *Allowance of Claims*

After the Effective Date, the Post-Effective Date Debtors and the Plan Administrator shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately before the Effective Date, including without limitation, rights with respect to Causes of Action retained for such purposes under Article IV.O hereof.

B.  *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the sole authority to: (1) File, withdraw or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim less than $2,000,000 without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.  *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Plan Administrator may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to

estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

**D.      *Adjustment to Claims Without Objection***

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Post-Effective Date Debtors without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**E.      *Time to File Objections to Claims***

Any objections to Claims shall be Filed on or before the later of (1) ninety (90) days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors or the Post-Effective Date Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims.

**F.      *Disallowance of Claims***

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless, with respect to Claims governed by a Bar Date that precedes the Confirmation Hearing, such late Claim has been deemed timely Filed by a Final Order entered at or before the Confirmation Hearing.**

All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**G.      *Amendments to Claims***

On or after the applicable Bar Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Effective Date Debtors. Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**H.**    *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**I.**    *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Plan Administrator shall provide to the holder of such Allowed Claim or Allowed Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**ARTICLE VIII.**
**RELEASE, INJUNCTION AND RELATED PROVISIONS**

**A.**    *Satisfaction of Claims and Termination of Interests*

As of the Effective Date, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall constitute the exclusive treatment, and be in complete satisfaction of Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date with respect to a Claim or Interest that is Unimpaired under the Plan.  The Confirmation Order shall be a judicial determination of the exclusive treatment and satisfaction of all Claims and Interests subject to the occurrence of the Effective Date.

**B.** *Release of Liens*

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled and compromised, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**C.** *Releases by the Debtors*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other

related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that nothing in the Plan shall be construed to release the Released Parties from gross negligence, willful misconduct or actual fraud as determined by a Final Order; and *provided*, *further*, that any right to enforce the Plan, Plan Supplement, and the Confirmation Order is not released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.C is:  (1) a good-faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Claims and Interests; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

D.    *Consensual Third Party Releases*

If a holder of a Claim or Interest opts-in to the Consensual Third Party Releases then each such holder of a Claim or Interest shall be a Releasing Party and, as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released each Debtor, Post-Effective Date Debtor, and Released Party from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that nothing in the Plan shall be

construed to release the Released Parties from gross negligence, willful misconduct or actual fraud as determined by a Final Order;  and *provided*, *further* that any right with respect to the Plan, Plan Supplement and the Confirmation Order is not released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.D is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties or the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

E.      *Exculpation*

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is exculpated from, any liability to any holder of a Cause of Action, Claim or Interest for any act or omission from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the sale of the Debtors' assets, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.      *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Interests that have been released or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of

the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.

## G.    *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Post-Effective Date Debtors, or another Entity with whom the Post-Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## H.    *Document Retention; Books and Records*

On and after the Effective Date, the Post-Effective Date Debtors must maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors, subject to the terms and conditions of the Plan.  Notwithstanding anything to contrary in the Plan or Confirmation Order, the Post-Effective Date Debtors and Plan Administrator, as applicable, may not use any documents or

information, however procured, that, in any way, (i) are subject to the Permanent Injunction or (ii) is sequestered information in the possession of Stroz, in either case of the foregoing (i) or (ii), without Qorvo's written consent. The sequestered information in the possession of Stroz shall be preserved at Stroz (or a replacement provider acceptable to Qorvo), unless and until the Plan Administrator and Qorvo agree to the destruction of the sequestered information, at which time the sequestered information shall be destroyed at the Post-Effective Date Debtors' expense, with an affidavit of destruction provided to Qorvo.  For avoidance of doubt, the sequestered information shall remain treated as subject to the Permanent Injunction.

**I.      *Any Reimbursement or Contribution***

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**J.      *Term of Injunctions or Stays***

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

**A.      *Conditions Precedent to the Effective Date***

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      The Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) in form and substance acceptable to the Debtors and the Creditors' Committee, and shall:

(a) authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b) decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c) authorize the Debtors, the Post-Effective Debtors, or the Plan Administrator, as applicable or necessary, to: (i) make all distributions and issuances as required under the Plan and (ii) enter into any agreements, transactions, and sales of property as set forth in the Plan and the Plan Supplement;

(d) authorize the implementation of the Plan in accordance with its terms; and

(e) provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

2.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      all Allowed Professional Fee Claims required to be approved by the Bankruptcy Court shall have been paid in full or the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

4.      the Debtors shall have paid or caused to be indefeasibly paid in full all Convertible Notes Agent Fees invoiced and due no later than one (1) Business Day prior to the Effective Date;

5.      the Plan Administrator shall have been appointed;

6.      the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors and the Creditors' Committee; and

7.      the Debtors shall have implemented all transactions contemplated herein in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors and the Creditors' Committee.

## B.      *Waiver of Conditions*

The conditions to Consummation set forth in Article IX.A may be waived by the Debtors with the consent of the Creditors' Committee without further notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; *provided* that any waiver that would materially affect the rights of holders of Convertible Notes Claims shall be reasonably acceptable to the Convertible Notes Agent.

### C.    *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests or any other Entity or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holders of Claims or Interests or any other Entity in any respect.

**ARTICLE X.**
**MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN**

### A.    *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Creditors' Committee, reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with section 1127 of the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan) and only with the consent of the Creditors' Committee, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.   Notwithstanding the foregoing, any modification to this Plan that would materially affect the rights of holders of Convertible Notes Claims shall be reasonably acceptable to the Convertible Notes Agent and the holders of Convertible Notes Claims and shall require the prior written consent of the Convertible Notes Agent (with such consent not to be unreasonably withheld, conditioned, or delayed); *provided* that none of the provisions herein regarding payment of the Convertible Notes Agent Fees shall be modified or amended without the prior written consent of the Convertible Notes Agent.

### B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.    *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.   If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan

shall (a) constitute a waiver or release of any Claims, Interests or Causes of Action; (b) prejudice in any manner the rights of such Debtor, any holder or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any holder of a Claim or Interest or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned) and (c) any dispute regarding whether a contract or lease is or was executory, expired or terminated;

4.    ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.    enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code to the extent the Plan Administrator asks the Bankruptcy Court to approve such sale pursuant thereto;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions granted in connection with and under the Plan, including under Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to the Plan;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or that relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority treatment pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

20.    hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

21.    enforce all orders previously entered by the Bankruptcy Court; and

22.    hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**A.    *Immediate Binding Effect***

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors and any and all holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**B.    *Additional Documents***

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the Post-Effective Date Debtors, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.    *Payment of Statutory Fees***

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors, the Post-Effective Date Debtors, and any entity making disbursements on behalf of any Debtor or any Post-Effective Date Debtor, or making disbursements on account of an obligation of any Debtor or any Post-Effective Date Debtor (each a "Disbursing Entity"), shall be jointly and severally liable to pay Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post-Effective Date Debtors, and any entity making disbursements on account of an obligation of any Debtor or any Post-Effective Date Debtor, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding the substantive consolidation of the Debtors called for in the Plan, each and every one of the Debtors, the Post-Effective Date Debtors, and Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the

U.S. Trustee until the Earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

**D.**     *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders unless and until the Effective Date has occurred.

**E.**     *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.**     *Determination of Tax Liabilities*

As of the Effective Date, the Plan Administrator (to the extent not the responsibility of the Purchaser(s) will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates. The Debtors or the Plan Administrator shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Debtors' Estates for any tax incurred during the administration of these Chapter 11 Cases.

**G.**     *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (which may be by E-mail), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by E-mail, when received, and addressed to the following:

>    ATech (Parent) Resolution Corp.
>    c/o Getzler Henrich & Associates LLC
>    295 Madison Avenue, 20th Floor
>    New York, NY 10017
>    Attention: Mark D. Podgainy
>    Email: mpodgainy@getzlerhenrich.com

>    with copies (which shall not constitute notice) to:

>    K&L GATES LLP

Southeast Financial Center, Suite 3900
200 South Biscayne Blvd.
Miami, Florida 33131
Attention: Jeffrey T. Kucera
            Margaret R. Westbrook
Email:    jeffrey.kucera@klgates.com
          margaret.westbrook@klgates.com

and


Landis Rath & Cobb LLP
919 Market Street
Suite 1800
Wilmington, Delaware 19801
Attention: Matthew B. McGuire
            Matthew R. Pierce
Email:    mcguire@lrclaw.com
          pierce@lrclaw.com

After the Effective Date, the Post-Effective Date Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

## H.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice, Claims and Balloting Agent at https://cases.stretto.com/ATech/; or the Bankruptcy Court's website at http://www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## J.    *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a

judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

### K.  *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

### L.  *Closing of Chapter 11 Cases*

The Post-Effective Date Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

### M.  *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

ATech (Parent) Resolution Corp and its Debtor Affiliates

By:    */s/ Mark D. Podgainy*
Name:  Mark D. Podgainy
Title:   Finance Transformation Officer

Dated: December 11, 2025

# Exhibit A

{1472.002-W0083679.3}

**Released Directors and Officers**

1. Jill Frizzley
2. Matthew Kahn
3. Mark Podgainy